testifies that during the year commencing May 1, 1904, and expiring April 30, 1905, the holder did not obtain any other liquor tax certificate. There is evidence, as I have pointed out, that at the time of the alleged violations such certificate was in his possession and displayed in his place. And the excise agent testifies that when the holder sold the liquor to the agents he said to them that he only had "a growler's license and I can't sell by the drink." The term "growler" is "slang U. S. for a vessel, as a pitcher, jug, pail, or can, brought by a customer for beer." Century Dictionary. If there were any doubt as to the meaning of the term, it is dissipated by the explanation of the speaker, "and I can't sell by the drink."

I see no error in the record that would justify the disturbance of the judgment, and I therefore recommend that it and the order be affirmed, with costs. All concur.

---

(117 App. Div. 318)

### THAYER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department. January 9, 1907.)

1. RAILROADS—OPERATION—PERSONAL INJURIES—PERSON ON TRACK—QUESTION FOR JURY.

In an action for injuries from being struck by a train while caught in the cattle guards, evidence *held* to present a question for the jury whether the engineer made a proper effort to stop the train after discovering plaintiff's peril.

2. APPEAL—REVIEW—QUESTIONS OF FACT—NONSUIT.

In reviewing a judgment on a nonsuit, the appellate court must assume the most favorable view of the evidence for plaintiff, giving him the benefit of any inferences which may properly be drawn from it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 4024.]

Chester, J., dissenting.

Appeal from Trial Term.

Action by William Thayer against the New York Central & Hudson River Railroad Company. From a judgment in favor of defendant on a nonsuit at the trial, plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

Fletcher W. Battershall (J. Newton Fiero, of counsel), for appellant.

Harris & Rudd (William P. Rudd, of counsel), for respondent.

JOHN M. KELLOGG, J. The plaintiff caught his foot in a cattle guard in the defendant's track, and was run over by an approaching train, receiving serious injury, for which he seeks to recover. It is conceded that the plaintiff had no business on the track, and the defendant was not called upon to exercise any care in looking out for his safety until it saw that he was in danger, and was then required to exercise the care which the known circumstances required to prevent an injury to the plaintiff. It therefore became necessary for the

plaintiff affirmatively to show at what particular time before the accident the engineer of the train first saw that plaintiff was imperiled, and for that purpose he called the engineer, who swore that when the engine was about 375 feet from the plaintiff the fireman notified him that some one at the cattle guard was swinging the train up, and he saw the plaintiff's head and part of his face, but by reason of an obstruction could not see the remainder of the plaintiff's person. Upon cross-examination the witness swore that he immediately did all that he could to stop the train. The plaintiff saw the train, and was swinging his hat as a warning all the while the train was approaching. The train consisted of five loaded freight cars, two empty cars, the engine, and tender. The engine and some of the cars were equipped with air brakes. The brakes, when tested just before the accident, worked properly; and it is not shown that any of the appliances of the train or engine failed to act properly. At a speed of 5 or 6 miles per hour the train was descending a grade of about 107 to 187 feet per mile, or an average grade of about 148.84 feet per mile. It stopped about 325 feet beyond the cattle guard, or about 700 feet from the place where the engineer first saw plaintiff's position. The track was in good condition. The plaintiff called two witnesses who qualified as experts in the management of a train. The conditions governing this train were stated, and their testimony tended to show that, if the engineer had done what he says he did, the train should have been stopped within 50 to 200 feet of the place where the power was first applied.

The plaintiff contended that this evidence presented the question of fact for the jury whether, after the emergency was known to the engineer, he did what reasonably could have been done to stop his train. The engineer of the train was the party at fault, if there was any fault with the defendant, and that fact was proper to consider with reference to his credibility. While we may feel that it is not entirely probable that this train, upon such a grade, could be stopped within the distance indicated by the experts, the question of their credibility and the probability of their testimony rested with the jury, and not with the court in the first instance. In reviewing this nonsuit, we must assume the most favorable view of the evidence in favor of the plaintiff, giving him the benefit of any inferences which may properly be drawn from it. The jury might have found, upon all the evidence, that the engineer did not make a proper effort to stop the train, and that, if he had done all he could do to stop it, the accident would not have happened. After verdict found the presiding justice has a right to order a new trial, if he feels that it is based upon evidence which is entirely unreliable and improbable. But he could not fairly pass upon those questions until after the jury had considered the case.

The judgment is therefore reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except CHESTER, J., who dissents.