FRANK C. WEITZMANN, JR., by FRANK C. WEITZMANN, His Guardian ad Litem, Respondent, *v.* A. L. BARBER ASPHALT COMPANY, Appellant.

1. NEGLIGENCE — AS TO LICENSEES OR TRESPASSERS. The only duty which the owner or occupier of premises owes to a licensee or trespasser is to abstain from inflicting wanton or intentional injury. As to persons injured upon premises adjacent to those owned or occupied by the alleged wrongdoer a different rule applies. In such cases persons, who use upon their own lands appliances, devices or methods that may cause injury to persons upon adjoining premises, are bound to exercise reasonable care to prevent such injuries.

2. CHARGE — ERROR. Where a boy was injured upon a pontoon or float moored to the shore of a bay, or arm of the sea, by a device used by the defendants in transferring barrels to a so-called dump, and it was not shown that the pontoon was upon the premises used or occupied by the defendant, it was error for the trial court to assume that the premises belonged to or were controlled by the defendant, and upon that theory to charge the jury that the defendant was liable if it did not warn trespassers of the danger to be apprehended.

*Weitzmann* v. *Barber Asphalt Co.*, 120 App. Div. 891, reversed.

(Argued December 12, 1907; decided January 7, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 17, 1907, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

On June 15th, 1906, the plaintiff, a boy then between 11 and 12 years of age, was playing upon a pontoon or float moored to the shore in front of premises leased by the defendant. While thus engaged the plaintiff was seriously injured and this action was subsequently brought to recover the damages which are said to have been occasioned by the culpable negligence of the defendant.

The defendant is engaged in the manufacture of asphalt and in that business it leased from one Brady certain premises at Stapleton, Staten Island, fronting on the waters of New

York bay.    These premises are situate between Prospect street on the north and Wave street on the south.    At Prospect street, adjacent to the shore, the defendant had erected a hoist about 30 feet high, from the top of which a wire cable was suspended which ran from the hoist on an incline towards Wave street.    This hoist was equipped with a device called a carrier.    Barrels were attached to this carrier by means of tongs that hung from the cable and were thus conveyed from the top of the hoist down the incline to what was called the dump at Wave street.    This cable at places in its course passed over the shallow water bordering on the irregular shore, and when it reached the dump was about three or four feet from the ground.    The hoist was not constantly in use. It was being used at the time when the plaintiff was playing upon the pontoon as stated.    Just as a barrel had been projected down the wire hoist, the plaintiff raised his head above the level of the pontoon, and was struck with such force as to cause a serious fracture of the skull.

The float or pontoon on which the plaintiff was playing when he was struck by the barrel lay a few feet below high-water mark adjacent to the premises in question near Wave street.    It was between 25 and 30 feet in length, 15 feet wide and about 6 feet deep.    At high tide it was surrounded by about 5 feet of water.    At extreme low tide it was high and dry.    The combined weight of the barrel and the carrier was between 300 and 325 pounds, and caused the cable to sag so that the barrel was low enough to strike the plaintiff's head when he raised it above the top of the float.

It is not clear from the record just how the plaintiff reached this float.    The defendant's evidence was to the effect that the approach was piled up with barrels and cans over which it was necessary for the plaintiff to climb in getting to the float. The plaintiff's evidence tended to show that he crossed a continuation of Sand street which terminates at the water's edge just about where the float was moored; that there was a traveled way there between 12 and 15 feet wide, passing Brady's

barn to a dock, from which there was a plank that extended
to the float.

The record indicates that the plaintiff and some other boys
had been upon and about this float on the day prior to the
accident and had observed some fish there. On the day of
the accident the plaintiff went there with two boy companions,
and was struck as stated. He had seen the cable and barrels
passing over it. The plaintiff's father had seen boys playing
about the float on several occasions prior to the accident. He
said that he had observed this cable and the barrels passing
over it, but that the place had not impressed him as being
dangerous; that at extreme low tide the barrels would pass
about 5 or 6 feet above the float, and that the distance varied
with the tide. Other evidence tended to show that when boys
were on the float they were in plain sight of the men on the
hoist engaged in sending the barrels over the cable. There
was also evidence tending to show that the defendant employed
a watchman to keep away from the premises persons who were
not employed there.

The place where the float was moored is designated as Front
street, which runs along the shore of the premises in question.
Although called Front street, it was covered with water at
high tide. The defendant's lessor, Brady, testifying as a wit-
ness for the defendant, disclaimed any ownership of the land
under water at the place where the float lay.

*Frank Verner Johnson* for appellant. The trial court's
instructions to the jury wrongfully imposed upon the defend-
ant a duty and degree of care for which there is no precedent
in law or basis in sound reason. (*Downes* v. *E. B. Co.*, 179
N. Y. 136; *Walsh* v. *F. R. R. Co.*, 145 N. Y. 301; *Daniels*
v. *N. Y. & N. E. R. R. Co.*, 154 Mass. 349; *Frost* v. *E. R.
R. Co.*, 64 N. H. 220; *Magar* v. *Hammond*, 171 N. Y. 377;
183 N. Y. 387; *Barney* v. *H., etc., R. R. Co.*, 126 Mo. 372;
*Morrissey* v. *E. R. R. Co.*, 126 Mass. 377; *Masser* v. *C., etc.,
R. R. Co.*, 68 Iowa, 602; *Magner* v. *Baptist Church*, 174
Penn. St. 84; *D., etc., Ry. Co.* v. *Reich*, 61 N. J. L. 635.)

*George M. Pinney, Jr.*, and *Warren C. Van Slyke* for respondent. Defendant's two exceptions to the charge are absolutely of no avail on this appeal. (*Knight* v. *Lanier*, 69 App. Div. 457; *Wilson* v. *A. B. Co.*, 74 App. Div. 596; *Albert* v. *City of New York*, 75 App. Div. 553; *Larmore* v. *C. P. I. Co.*, 101 N. Y. 391; *Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 104 N. Y. 362; *Wittleder* v. *C. El. Ill. Co.*, 50 App. Div. 478; *Walsh* v. *F. R. R. Co.*, 145 N. Y. 301.)

WERNER, J. There are two questions in this case which survive the unanimous affirmance of the judgment entered upon the verdict, and they arise upon exceptions taken to the charge of the learned trial court in submitting the case to the jury. The charge, so far as material to the questions thus raised, was as follows: " Now, if a person's premises under ordinary circumstances, are so situated that a person walks upon them and there is a dangerous part of them, a hole for instance, or anything of that kind, and he falls into it, he being at the time a trespasser, going there without permission, the owner of the premises is not liable for anything. If in this particular instance the boy had fallen into the hole of that pontoon or float, the defendant in this action would not be liable at all, because that would be a danger that a person going upon the premises naturally assumed. But this case presents a different situation. Here was a danger that existed at one moment and did not exist at another. Here was a line drawn across there from one point to another, that at one time it would be so high that it would not touch the boy, an object passing over it would not touch him; at one time no object is going over it and at another time the position of the line would change and at the rate of a mile a minute a heavy object would be shot over it. You are to decide whether, with that situation, about which there is no dispute here, the defendant in this action took the necessary precaution to see that people were not injured in any way coming in contact with objects moving over it. It was a different situation to

my mind, and I so charge you, than where it was a stationary danger or a danger that would be present all the time. It was more in the nature of a projectile fired from some gun or instrument which suddenly shot across the premises." At the conclusion of the charge, the defendant's counsel took the following exception: "I except to your honor's charge, or that part of it in which you stated that the circumstances of this case present a situation different from a stationary danger, or words to that effect, and your honor's charge in regard thereto." Later the defendant's counsel said: "It is my theory that the defendant owed no duty to keep people off from that property; that if people came there they took all the risks in connection with its transferring of the barrels over this cable, and I ask you to charge that." The court declined to so charge and the refusal was excepted to.

While the *locus in quo* is not very accurately or clearly described, we think it is fairly to be inferred from the record that the float upon which the plaintiff was when the accident occurred, was not upon the land leased by the defendant, but was in Front street, so called, on the land below high-water mark bordering upon the leased property. Bearing this in mind, it will be noted that under the charge of the trial court the case was submitted to the jury upon the assumption that the accident happened on the premises actually occupied and controlled by the defendant. The jury were instructed, in effect, that if the accident happened upon the property leased or controlled by the defendant it would be liable if it did not take sufficient precaution to warn trespassers of the danger to be apprehended. We think the learned trial court misapprehended the rule governing the liability of the defendant upon that assumption. The defendant had the undoubted right to maintain the apparatus in question on its property, and while it was probably much more dangerous than stationary machinery, we do not think that circumstance altered the rule with respect to its liability towards mere trespassers or bare licensees. As to such persons the well-settled rule is that the only duty of the owners or occupiers of the land is to

abstain from inflicting intentional, wanton or willful injuries. (*Magar* v. *Hammond*, 183 N. Y. 387; *Downes* v. *Elmira Bridge Co.*, 179 id. 136; *Birch* v. *City of New York*, 190 id. 397.) Neither is this case within the rule that an owner of property is liable where he places an engine of destruction upon his land for the purpose of injuring trespassers, such as spring guns and kindred devices. (*Bird* v. *Holbrook*, 4 Bing. 628; *Hooker* v. *Miller*, 37 Iowa, 613.)

Nor were the instructions to the jury appropriate to a case where the person injured was not upon the property leased by the person charged with inflicting the injury, but upon adjoining premises. Such a case involves still another rule than either of those above referred to. If an owner or occupier of land uses upon it appliances, devices or methods that may cause injury to persons upon adjoining premises, or in public places, such owner or occupier owes to such persons the duty to take reasonable precautions to avoid injuring them. An illustration of this last-mentioned rule is found in *Driscoll* v. *Newark & R. Lime & Cement Co.* (37 N. Y. 637), where the plaintiff was going along a footpath which ran across defendant's property, and was injured by stones thrown from a blast in defendant's quarry. It did not clearly appear in that case whether the plaintiff, at the time of the accident, was upon the defendant's property or upon adjoining premises. In affirming a judgment for the plaintiff this court held that the question whether the defendant had taken sufficient precautions to warn persons who might reasonably be anticipated to be within range of the stones thrown from the blast was properly submitted to the jury. Other cases involving the same principle are *Wilson* v. *Am. Bridge Co.* (74 App. Div. 596) and *Wittleder* v. *Citizens' El. Ill. Co.* (47 id. 410; S. C., 50 id. 478). Whether the defendant did take such precautions as are suggested by this rule, assuming that there was a question whether the plaintiff was upon its land or not, should have been submitted to the jury under instructions clearly pointing out the defendant's duty and liability in such circumstances.

It is practically impossible to decide upon the record now before us just what means of access to the float were open to the plaintiff or others, either across the land leased by the defendant or in other ways. The trial court did submit to the jury the question whether, under the circumstances, the defendant took sufficient precautions to avoid accidents to persons coming upon the defendant's premises. But this must be taken in connection with the erroneous instruction that the plaintiff could recover even though he were a trespasser. This was an erroneous view of the law as applicable to the situation assumed by the court to have existed at the time of the accident. It may be that the jury understood that the plaintiff was not upon the defendant's land at the time of the accident, but that was clearly not the theory upon which the learned trial judge instructed the jury.

The judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, WILLARD BARTLETT and HISCOCK, JJ., concur.

Judgment reversed, etc.