(140 App. Div. 341.)

ROCHE v. AMERICAN ICE CO.

(Supreme Court, Appellate Division, First Department.   November 4, 1910.)

NEGLIGENCE (§ 32*)—PERSONAL INJURIES—LICENSEES.

    The failure of defendant's servant in throwing a bale of hay from a loft to use reasonable care to avoid injuring plaintiff, a mere licensee on the premises, did not render defendant liable for resulting injuries.

    [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

    Ingraham, P. J., and Dowling, J., dissenting.

Appeal from Trial Term, New York County.

Action by Maurice P. Roche against the American Ice Company. From the judgment and from an order denying a motion for a new trial, defendant appeals.   Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and DOWLING, JJ.

Thomas D. Adams (Beno B. Gattle, of counsel), for appellant.
Kilroe & Swarts (Edwin P. Kilroe, of counsel), for respondent.

CLARKE, J.   The plaintiff at the time of the accident was a boy 15 years of age.   The defendant had a stable at the foot of East Ninety-First street, between Avenue A and the East river.   It consisted of two buildings.   One was built at an angle with the sidewalk; the other forming an obtuse angle with the first in such a manner that an open triangular space was formed, the base of which was the sidewalk.   The apex of the triangle was about 35 feet from the curb of Ninety-First street and 20 or 25 feet back from the building line. This space was not used by the public, and when boys were seen in there they were driven away by the watchman.   One building was used as a stable.   The other had in the lower portion feed and harness, and in the upper portion lived the watchman.   The upper story of the stable was used as a hayloft, and in the wall of the hayloft was an opening level with the floor, out of which hay was tumbled when necessary into the V-shaped space below.   This opening was about 10 feet away from the doorway of the stable.   Inside of the stable was a ladder leading on an angle up to the hayloft.   There was no opening in the floor of the hayloft except the small hole into which the ladder fitted and wherein it rested.   This was about 2 feet square and just large enough for a man to pass through, not large enough to pass a bale of hay.

On Sunday, June 23, 1901, the plaintiff came to those premises at about 9 o'clock in the morning, to visit his father, who was working there.   It was his first visit.   Plaintiff's father worked irregularly for the defendant company as a helper to a driver on one of its ice wagons. He had never before worked in the stable; but he was there that morning helping Johnson, whose duty it was to do stable work, attend to the horses, and clean the stable.   After talking to his father about half an hour, plaintiff and Johnson's boy went off to have a swim at the public bathhouse and returned about 10:30.   Plaintiff heard Johnson

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

say, "I will go up and throw hay down." With that Johnson went up the ladder to the hayloft. Plaintiff saw him go up, heard him throw around and handle bales of hay in the loft. Dust and hay seed came down. Plaintiff's father told plaintiff to go outside so as not to get the dust and dirt on his Sunday clothes. Plaintiff walked outside and between walking and standing he had gone about 10 feet from the door and was still in the triangular space going toward the sidewalk. After the plaintiff had left, plaintiff's father shouted: "Dump it down, Andy. The boy has gone out." Then the bale of hay, thrown by Johnson out of the opening in the wall of the hayloft into the triangular space below, struck the plaintiff on the leg and injured him. Johnson testified that before throwing out the hay he shouted, "Look out below!"

The defendant's claim is that the boy was on its property without invitation, request, or permission and was a mere trespasser; that its only duty toward him was to refrain from intentionally, willfully, or wantonly injuring him; that the plaintiff has no cause of action for mere negligence, and it moved to dismiss and excepted to various portions of the charge, and claims that the case was tried entirely upon a wrong theory, to wit, negligence.

The court charged:

"If you find that the employé of the defendant was guilty of negligence, and that the plaintiff himself was entirely free from negligence, then plaintiff is entitled to recover."

Again:

"He must prove to your satisfaction, by a preponderance of evidence, first of all, that the defendant's employé was negligent in the manner in which he performed his work, and plaintiff must also satisfy you by a preponderance of evidence that the plaintiff himself was in no way negligent and was in no way to blame for the accident."

He also charged:

"In order to enable you to determine whether or not the employé of the defendant was or was not negligent, and whether or not the plaintiff himself was free from negligence, it will be necessary for you to know what duties rested upon the plaintiff. The plaintiff was not in the employ of the defendant. He was on these premises, not by any express invitation, but he was there at best by sufferance. He was at most a licensee. In case a person enters upon land unlawfully, then he is a trespasser, if he has not any right there at all; and in cases of that kind it is the duty of the owner of the premises to refrain from willful and wanton acts of negligence. Where a person is on the premises at sufferance or as licensee, the rule of law is as follows: The defendant had no right intentionally to injure the plaintiff, and the defendant is only liable if it heedlessly or carelessly injured the plaintiff while performing its own business. The defendant owed this plaintiff a duty to abstain from injuring him either intentionally or by failing to exercise reasonable care; but defendant did not owe plaintiff the duty of active vigilance, to see that he was not injured while upon its land merely by permission for his own convenience. You, then, are to determine whether the employé of the defendant, Mr. Johnson, was negligent under the rules laid down. Did Mr. Johnson act as a reasonably prudent person would act under the circumstances? Mr. Johnson says, and it is admitted by the plaintiff, that the plaintiff as well as his father were informed that Johnson was going upstairs to throw down hay. Johnson claims that he looked down and saw nobody, and called, 'Look out!' and then threw the bale of hay. If Johnson did what he claims he did, then there can be no liability on the part of this defendant. What more can a reasonably prudent person do under the

circumstances? And, after all, that is all that was required of Mr. Johnson, to act as an ordinarily prudent person would act under the circumstances. What was there required of this plaintiff? To be sure he owed a duty to himself, and that duty was to exercise such care and caution as a prudent person would exercise under the circumstances. Plaintiff was informed that this hay in bales was to be thrown down. It is for you to determine whether this plaintiff then acted as an ordinarily prudent person would act under the circumstances. If my recollection serves me rightly, the plaintiff claims he was standing in front of this door when struck. It is for you to determine whether, under the circumstances, standing in front of this door was the act of a reasonably prudent person."

Counsel for defendant having excepted to the statement in the charge that he was at best there by sufferance and that he was at best licensee, said:

"Now, inasmuch as your honor has charged the jury that he was there at best by sufferance, I ask your honor to charge the jury, upon the proof offered upon the part of the plaintiff himself, that as a matter of law he was not there by sufferance, and there is no evidence to justify the conclusion that the defendant had any opportunity of passing upon any state of facts which would justify the conclusion that the plaintiff was there by sufferance; this being the first time he had ever gone there. (Declined. Exception.)"

And a similar request was made as to his being there as licensee. Then:

"I ask your honor to charge the jury as a proposition of law that upon the proof offered upon the part of the plaintiff in his affirmative case the plaintiff was there as a trespasser pure and simple. I ask your honor to charge this jury as a proposition of law that, being there as a trespasser, the propositions of negligence as you have charged in connection with this case have no application to the state of facts proved by the plaintiff. I ask your honor to charge this jury affirmatively that the plaintiff being there as a trespasser unless he was injured by the willful or malicious conduct of an agent of the defendant, that the jury should find a verdict for the defendant."

All of these requests were declined and exceptions taken.

The respondent relies upon, and the court used in its charge, the language of Peckham, J., in Walsh v. Fitchburg Railway Co., 145 N. Y. 301, 39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615, the turntable case, where the court, after holding that the plaintiff was on the premises of the defendant by sufferance only, said:

"The defendant had no right intentionally to injure him, and it would be liable if it heedlessly or carelessly injured him while performing its own business. It owed him a duty to abstain from injuring him either intentionally or by failing to exercise reasonable care; but it did not owe him the duty of active vigilance to see that he was not injured while on its land, merely by permission for his own convenience."

The respondent also claims that the act of Johnson in throwing out the bale of hay, under the circumstances of this case, was so heedless as to bring it within the characterization of the cases as wanton and reckless.

The appellant claims that the language used in the Walsh Case, supra, does not now represent the law of the state of New York, and relies upon the language of Judge Werner in Weitzmann v. Barber Asphalt Co., 190 N. Y. 452, 83 N. E. 477, 123 Am. St. Rep. 560:

"The jury were instructed in effect that, if the accident happened upon the property leased or controlled by the defendant, it would be liable if it did not take sufficient precaution to warn trespassers of the danger to be apprehended. We think the learned trial court misapprehended the rule governing the liability of the defendant upon that assumption. The defendant had the undoubted right to maintain the apparatus in question on its property, and, while it was probably much more dangerous than stationary machinery, we do not think that circumstances altered the rule with respect to its liability towards mere trespassers or bare licensees. As to such persons the well-settled rule is that the only duty of the owners or occupiers of the land is to abstain from inflicting intentional, wanton, or willful injuries. Magar v. Hammond, 183 N. Y. 387 [76 N. E. 474, 3 L. R. A. (N. S.) 1038]; Downes v. Elmira Bridge Co., 179 N. Y. 136 [71 N. E. 743]; Birch v. City of New York, 190 N. Y. 397 [83 N. E. 51, 18 L. R. A. (N. S.) 595]."

If, as to mere trespassers and bare licensees, it be the rule "that the only duty of the owners or occupiers of the land is to abstain from inflicting intentional, wanton, or willful injuries," then this plaintiff has no cause of action. In the Weitzmann Case the defendant had erected a hoist about 30 feet high, from the top of which a wire cable was suspended, equipped with a device called a "carrier." Barrels were attached to this carrier by means of tongs to the cable and were thus conveyed from the top of the hoist down the incline to what was called the "dump." Plaintiff was playing upon a pontoon moored to the shore in front of plaintiff's premises. Just as a barrel had been projected down the wire hoist, plaintiff raised his head above the level of the pontoon and was struck. Here we have the element of installed machinery or apparatus, a regular course of business, and an obvious danger, and the open and dangerous condition was also present in the case of Downes v. Elmira Bridge Co., 179 N. Y. 136, 71 N. E. 743.

In Larmore v. Crown Point Co., 101 N. Y. 392, 4 N. E. 752, 54 Am. Rep. 718, the court said:

"The precise question is whether a person who goes upon the land of another without invitation to secure employment from the owner of the land is entitled to indemnity from such owner for an injury happening from the operation of a defective machine on the premises not obviously dangerous, which he passes in the course of his journey, if he can show that the owner might have ascertained the defect by the exercise of reasonable care. We know of no case which goes to this extent. There is no negligence in a legal sense which can give a right of action, unless there is a violation of a legal duty to exercise care. The duty may exist as to some persons, and not as to others, depending upon peculiar relations and circumstances. An employer is required to take reasonable precautions and to exercise reasonable care in providing safe machinery and appliances for the use of his servant. The duty arises out of the relation. * * * But in the case before us, there were no circumstances creating a duty on the part of the defendant to the plaintiff to keep the whimsey in repair, and consequently no obligation to remunerate the latter for his injury. The machine was not intrinsically dangerous; the plaintiff was a mere licensee; the negligence, if any, was passive and not active, of omission and not of commission."

Of course, in the case at bar, the negligence, if any, was not passive like a failure of inspection of machinery, but was active, to wit, the throwing of a bale of hay out of a window without looking to see whether there was any one below. But the sending of a barrel down the cable without looking to see whether any one was in the way or liable to injury, as in the Weitzmann Case, would seem to be a similar

act—active and not passive. If Judge Werner's language, relied upon by the appellant, is to be confined to the facts of the case in which he wrote, then it is in harmony with a number of cases of which we have cited a few. If it is a broad and general rule to be applied to all cases, then the plaintiff cannot recover. We have been from time to time admonished that the language of an opinion is the expression of the individual judge who wrote it and is not to be considered except in connection with the whole case.

At the same time, the rule is stated broadly and is applied to licensees as well as trespassers. The act of Johnson which inflicted the injury complained of certainly was not intentional, nor was it willful. It does not seem possible to hold, under the facts as proven, that it was wanton. To hold the defendant liable for the failure of its employé to use reasonable care, under the circumstances of this case, would be to wipe out the distinction as to trespassers. We do not think the Court of Appeals has as yet so decided.

We are also of the opinion that, if the question of actionable negligence is involved, the plaintiff has failed to bear the burden of establishing the negligence of the defendant, and that the verdict is against the evidence.

It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event.

McLAUGHLIN and LAUGHLIN, JJ., concur.

INGRAHAM, P. J. (dissenting). The defendant maintained a stable with an entrance through a triangular passageway to the street. To gain an entrance to this stable it was necessary to pass under a door connecting with the second story of the stable, where hay was stored for the use of the defendant's horses on the floor below. There was a trapdoor from the loft to the stable below, but that was not large enough to permit bales of hay to pass. The defendant's employés were in the habit of throwing bales of hay out of this door opening out on the passageway between the entrance of the stable and the street. The danger of a bale of hay thrown out of this door hitting any one using the passageway from the stable to the street was obvious, and it was certainly negligence for a person to throw out a bale of hay without first ascertaining whether or not there was any one in the passageway. The defendant's employé did throw out of this door into the passageway a bale of hay which struck the plaintiff and severely injured him. This is all conceded. Whether the defendant's employé used the proper precaution to ascertain whether or not there was any one in the passageway liable to be injured was clearly a question for the jury, and the case was submitted to the jury in a manner which was certainly as favorable to the defendant as the facts justified. The defendant, however, claimed upon the trial, and now claims on this appeal, that the plaintiff was a trespasser as to whom the defendant owed no duty, and a determination of this question, it seems to me, decides this appeal.

I do not think that the plaintiff was a trespasser. The plaintiff's father was employed by the defendant in this stable and on the morning in question was working there. The plaintiff called there to see his father, was admitted into the stable by the defendant's employés, and there was no suggestion made to him then that he was not rightfully on the premises. He was certainly there with the consent of the defendant's employés then in charge of the stable. He used the only entrance to the stable that was provided by the defendant, and while thus on the premises I think the defendant owed him the duty of using ordinary care and prudence to avoid injuring him.

This is not a case where a person, going upon the defendant's premises, having no business there, was injured by machinery improperly guarded. Here the negligence complained of was the act of throwing down into the passageway maintained by the defendant as a means of access to the building upon the premises of a bale of hay, and it was this affirmative act of one of the defendant's employés, for whose negligence the defendant is liable, which resulted in the injury of a person whose presence upon the premises at the time of the injury was neither unlawful nor against the orders of the defendant, or its employés in charge of the property.

I do not think that there is any distinction between this case and the case of an entrance to a tenement house, or other building, where the public are admitted, and where an injury is occasioned by negligence of the owner of the building, or his employés, to a person who is lawfully on the premises, and that this case is controlled by Walsh v. Fitchburg Ry. Co., 145 N. Y. 301, 39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615. The rule laid down in that case has not been at all affected by the subsequent decisions which relate to a person who is purely a trespasser, as was the case of Weitzmann v. Barber Asphalt Co., 190 N. Y. 452, 83 N. E. 477, 123 Am. St. Rep. 560, and cases there cited. Assuming that the plaintiff was not a trespasser, the question then is: Was the act of the defendant, or its employés, considering the relations of the plaintiff to the premises, so negligent as to justify the jury in finding that the defendant's employés violated the duty that they owed to the plaintiff. I think, under the circumstances, the defendant owed to any one using this passageway lawfully the duty of at least exercising ordinary care to prevent a bale of hay thrown out of this window striking him, and that, therefore, there was a question for the jury which they have answered, and that their verdict is supported by the evidence.

I think, therefore, that the judgment should be affirmed.

DOWLING, J., concurs.