(153 App. Div. 379.)

### BURGESS v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. November 27, 1912.)

1. RAILROADS (§ 378*)—INJURIES TO PERSONS ON TRACK—PRECAUTIONS AS TO PERSONS SEEN ON TRACK.

Where a railroad engineer, when about 600 feet from a bridge about 30 feet long crossing a highway, saw something blue on the track on the bridge, where plaintiff and another little girl were lying down between the ties, his delay of a few seconds in putting on the brakes, until he saw that there was no response to his continued whistling, was not negligence, although such delay made it impossible to stop the train until it struck plaintiff, since defendant's duty towards plaintiff did not arise until its engineer discovered her presence and peril, and the sight of a small object on the track was not an indication of such peril, considering the short distance to a place of safety.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1281, 1282; Dec. Dig. § 378.*]

2. RAILROADS (§ 369*)—INJURIES TO PERSONS ON TRACK—CARE REQUIRED AS TO TRESPASSERS.

A railroad engineer owes to passengers and persons lawfully on the track the duty of keeping a lookout in order to prevent injury; but he owes no such duty to a trespasser.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1259–1262; Dec. Dig. § 369.*]

Appeal from Trial Term, Queens County.

Action by Jessie Burgess, an infant, by her guardian ad litem, Margaret Burgess, against the Long Island Railroad Company. From an

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

order granting a new trial after verdict for plaintiff, she appeals. Affirmed.

The following is the opinion of Putnam, J., in the trial court:

[1] Two little girls about seven years old, walking along a railway embankment, strolled upon the defendant's tracks, and made their way to the steel bridge which spans Jamaica avenue. This bridge is about 30 feet in length, carrying the double tracks of the Rockaway Division. The girls were lying together upon the track, down between the ties, where they were throwing cinders upon the street cars passing below. The fast express coming from the north, about two minutes late, was making up time on a slightly descending grade. The engineer testified that, when about 600 feet distant, he made out something blue on the track, which he first took to be a workman engaged upon the bridge, whereupon he sounded alarm whistles, but did not then apply the brakes. Plaintiff maintains that a first view of this object so low upon the track, being upon a bridge, should have indicated peril, and have required the train at once to stop. But defendant's duty towards the plaintiff arose when, and not until, its engineer discovered plaintiff's presence and peril. The sight of the small object lying on the track was not such an indication, Murch v. Western R. Co., 78 Hun, 601, 29 N. Y. Supp. 490. See, also, Foley v. N. Y. Central R. R., 78 Hun, 248, 28 N. Y. Supp. 816.

When the engineer saw he had no response from his continued alarm whistles—being about 200 feet from the bridge—he put on the emergency brakes and sanded the rails in the effort to stop. The children did not heed the train until it was almost upon them, and the plaintiff was struck and thrown upon the embankment. Two witnesses standing below, at the corner of Union Place and Jamaica avenue, thought that when this train first whistled it was more than 600 feet north of the bridge. Slight reliance, however, can be placed upon such fugitive impressions of the approach of an oncoming train. There is little variance as to the space to stop such a train under the air brakes. It did not come to a standstill until a flagman had gone back; but the reduction, after the emergency brakes, substantially agreed with the estimate of plaintiff's expert, that such a train could be stopped in a distance of between 500 and 530 feet. Hence there was no conflict between the engineer's testimony, of what he did, and the expert, called to impeach his narrative, as often arises. Thayer v. N. Y. Central Co., 117 App. Div. 318, 102 N. Y. Supp. 135; Feldman v. N. Y. Central, 142 App. Div. 339, 127 N. Y. Supp. 390. Neither was there any substantial discrepancy between the engineer's testimony in court and what he had said before the coroner. Both tell of the succession of preventive efforts, as the peril became manifest. Naturally the account brought out on the trial was more detailed. Upon the trial the engineer first stated the distance of 200 feet from the bridge as the point where the brakes were put on. An object seen on a short trestle or bridge over a street did not itself make a dangerous place, considering how few steps would take the person, even a child, to the abutment, and upon the open side path along the embankment. It is quite different from overtaking a couple, running for their lives, in plain view, along a bridge 370 feet in length, as in Feldman v. N. Y. Central R. R., 142 App. Div. 339, 127 N. Y. Supp. 390.

[2] Was the few seconds' delay before putting on the brakes such a conscious disregard of the plaintiff's situation and its perils as amounted to affirmative negligence toward a trespasser? By New York law, the engineer owes to the passengers on the train, and to persons lawfully on the track, to keep a lookout, in order to prevent injury to them; but he owes no such duty to a trespasser. The question is, not what the engineer might have seen by an earlier or closer scrutiny, but what he was called upon to do after the situation of plaintiff's peril was manifested to him. New York, N. H. & H. R. R. Co. v. Kelly, 93 Fed. 745, 35 C. C. A. 571; Chrystal v. Troy & Boston R. Co., 105 N. Y. 164, 11 N. E. 380; Buckley v. N. Y. Central, 142 App. Div. 10, 126 N. Y. Supp. 480. See, also, White v. New York Cen-

tral Co., 20 N. Y. Supp. 6,† where Cullen, J., held that a plaintiff was bound to show that the engineer saw the position of the deceased and made no effort to avoid injury.

Plaintiff, however, cites decisions in other jurisdictions which hold the engineer bound to keep a lookout for track trespassers. This has not been the law of New York, nor in the federal courts. 33 Cyc. 790, note 73. See 2 Thompson on Neg. §§ 1734, 1735. It is against the analogies of liability to trespassers generally. Weitzmann v. Barber Asphalt Co., 190 N. Y. 452, 83 N. E. 477, 123 Am. St. Rep. 560. The Demand Case, 198 N. Y. 102, 91 N. E. 259, does not lay down a different rule. It points out that if the engineer was guilty of omission of reasonable care, after having seen the man and horse 1,300 feet off, the jury could have rendered a verdict for plaintiff, although the intestate was primarily a trespasser, as his contributory negligence was a question of fact, and the primary trespass was not a proximate cause, as was ruled in Rider v. Syracuse R. T. Co., 171 N. Y. 139, 63 N. E. 836, 58 L. R. A. 125. In the present case the efforts to stop the train are proven to have been made when the danger was realized, and the defendant is not to be blamed because it was not successful in bringing the train to a stop before the accident.

It follows that the verdict is against the weight of evidence. It is therefore set aside, and a new trial ordered.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

Nicholas W. Hacker, of New York City, for appellant.
Matthew J. Keany, of New York City, for appellee.

PER CURIAM. Order unanimously affirmed, with costs, on the opinion of Mr. Justice Putnam at Trial Term.