JULIA CAPITULA, as Administratrix, etc., of SOPHIA CAPITULA, Deceased, Respondent, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Third Department, March 8, 1922.

Railroads — action for death of plaintiff's intestate killed while crossing on private railroad bridge — evidence — question for jury not raised by negative evidence that signal was not heard — intestate was trespasser — willful injury not shown — use of bridge by other people did not make intestate licensee — error to admit expert testimony as to time in which train should have been stopped where hypothetical question not based on actual conditions — instructions — error to refuse to charge that if engineer sounded whistle and applied brakes as soon as he discovered intestate might not get off track in time he was not guilty of willful act — error to refuse to charge that engineer had right to assume in first instance that intestate would get off track.

In an action to recover for the death of plaintiff's intestate, who was struck by one of defendant's engines while she was on a bridge of the defendant, which was not a public crossing, a question of fact as to whether a warning signal was given was not raised by purely negative testimony to the effect that the witnesses did not hear a warning signal given, where there was positive evidence on the part of defendant's witnesses that a warning was given.

At the time of the accident plaintiff's intestate was a trespasser on defendant's bridge and the defendant owed no duty except not to wantonly or willfully injure her. There is no evidence in the record that the defendant's engineer evinced a reckless disregard for the life or limb of the deceased.

Though there was some evidence that for a long period of time the railroad bridge in question had been used by the people in the neighborhood thereof as a means of foot passage, this did not constitute plaintiff's intestate a licensee.

It was error for the court to permit expert witnesses to testify as to the time within which the engineer should have stopped the train, as the hypothetical questions put to the witnesses were based upon conditions and equipment not obtaining on defendant's road at the time and place of the accident.

It was error for the court to refuse to charge the jury that " if the jury find that immediately upon discovering that this girl was on the track and not likely to get off in time, the engineer did sound his whistle and apply his brakes, he was not guilty of any wanton, or willful, or reckless act," for the charge was correct as requested and the court had not so charged before in words or effect.

It was error, also, for the court to refuse to charge that " the engineer was not bound to try to stop this train the instant that he saw the deceased upon the bridge, but that he had the right, in broad daylight, if his train was perfectly visible and its approach apparently heard and known, to assume, at least in the first instance, that this girl would get off the track."

APPEAL by the defendant, The New York Central Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 19th day of May, 1921, upon the verdict of a jury for $3,500, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Visscher, Whalen, Loucks & Murphy,* for the appellant.

*John H. Gleason,* for the respondent.

KILEY, J.:

The record in this case discloses that between seven and eight o'clock on the morning of the 24th day of November, 1920, the defendant was running its train, consisting of an engine and four cars, over its track between the towns of Colonie and Green Island in the county of Albany, N. Y. At the point in question defendant's track crosses the canal on an iron bridge some feet above the water. Plaintiff's intestate, a girl of sixteen years, was crossing this bridge going toward Green Island and was struck by the engine of said train; her body dropped through the bridge into the water of the canal, dead. Upon the trial the plaintiff recovered a verdict of $3,500 and costs. This bridge is not a public crossing; its use is solely for carrying the tracks of defendant upon which its trains cross, and it is the owner thereof. The engineer's attention was called to the fact that this girl was upon the bridge, and he saw her when his engine was about 800 feet west of the entrance to said bridge. He and some other witnesses say he blew the whistle giving the danger signal. The only evidence to the contrary was negative in character, viz., that they did not hear it blow. Plaintiff's negative evidence, as against the defendant's positive evidence, did not present a question of fact for the jury. (*Matutinovich* v. *N. Y. Central R. R. Co.,* 182 App. Div.

451; *Foley* v. *N. Y. C. & H. R. R. R. Co.*, 197 N. Y. 430.)  The engineer further testified, and no evidence was produced to the contrary, that he, at the same time, advanced his emergency brake to service position, and with the same movement and immediately advanced the brake to the " hole " so called and meaning to the utmost position it could be advanced for stopping the train.  Defendant's evidence is to the effect that there had been a light snow or heavy frost that morning which rendered the rails slippery.  The train was going thirty-five miles an hour when the girl was first seen upon the track; the train was not stopped and the girl was killed.  This is not the ordinary negligence case, where a person is killed upon a crossing kept, maintained or allowable for public use.  It is not claimed that plaintiff's intestate had any right upon this bridge.  She was a trespasser, and as to her the defendant owed no duty except not to wantonly or willfully run her down.  (*Weitzmann* v. *Barber Asphalt Co.*, 190 N. Y. 452.)  The record shows that there was no reckless disregard of the life or limb of deceased on the part of the defendant's engineer.  She had no right upon the track in question; such use is positively forbidden by statute.  (Railroad Law, § 83.)  Some evidence was introduced that for a long period of time this railroad right of way had been used by the people in that neighborhood.  This did not constitute the plaintiff's intestate a licensee.  The Court of Appeals in *Keller* v. *Erie R. R. Co.* (183 N. Y. 67), reversing the judgment of the Appellate Division (98 App. Div. 550), held that no length of acquiescence by the railroad in such use could create a right of user by license or by sufferance.  Furthermore the violation of section 83 of the Railroad Law is a misdemeanor.  (Penal Law, § 29.)*  In view of the provisions of the Railroad Law (§ 83, *supra*) and the decisions of the courts with reference thereto, no distinction is made between trespassers and bare licensees.  (*Weitzmann* v. *Barber Asphalt Co.*, 190 N. Y. 452; followed and emphasized in *St. Cartier* v. *N. Y., N. H. & H. R. R. Co.*, 179 App. Div. 117.)  It appears from the evidence of the engineer that he used his best effort and judgment in what he did under the circumstances existing at the time and place.  These include the fact, undisputed, that the sander did not work; that he had but one brake flange or shoe; that the rails were slippery; and he is upheld by plaintiff's experts that, under such circumstances, he could do no more.  I cannot see where he can be charged with even a faulty judgment.  Acting with promptness and in accordance with his best judgment, doing what he could

---

* See Penal Law, § 1990, subd. 4, as added by Laws of 1917, chap. 350.—[REP.

to avert the accident, but failing, he should not be chargeable with the death of this girl. (*Piehl* v. *Albany Railway*, 19 App. Div. 471; *Ogier* v. *Albany Railway*, 88 Hun, 486.) What has been thus far said is suggestive that this judgment should be reversed; but exceptions to the receipt of evidence over defendant's objection, and exceptions to the refusal to charge as requested by defendant, make the suggestion a certainty. The plaintiff called two engineers from other roads as experts. Hypothetical questions were put to these witnesses based upon conditions and equipment not obtaining on this road at the time and place of the accident; consideration does not seem to have been given to the single brake flange, the slippery condition of the rails or the unworkable condition of the sander; over defendant's objection they were allowed to answer that the defendant's engineer ought to have stopped his train several hundred feet short of the place where it did stop. This was error and could not escape influence on the jury. Defendant's counsel requested to charge as follows: " I will ask your Honor to charge that if the jury find that immediately upon discovering that this girl was on the track and not likely to get off in time, the engineer did sound his whistle and apply his brakes, he was not guilty of any wanton, or willful, or reckless act." The court refused to so charge except as he had already charged. No such charge in words or effect appears in the first instance; the refusal was reversible error. Defendant's counsel made the further request as follows: " I will ask your Honor to charge that the engineer was not bound to try to stop this train the instant that he saw the deceased upon the bridge, but that he had the right, in broad daylight, if his train was perfectly visible and its approach apparently heard and known, to assume, at least in the first instance, that this girl would get off the track." The court answered: " I will leave that as a question of fact for the jury in this particular case." Under the holding in *Chrystal* v. *Troy & Boston R. R. Co.* (105 N. Y. 164) and *O'Brien* v. *Erie R. R. Co.* (210 id. 96) the defendant was entitled to have the charge as requested.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur; COCHRANE, P. J., and HINMAN, J., in result in separate memorandum by HINMAN, J.

HINMAN, J. (concurring in part):

I agree with the conclusion that the case should be reversed and sent back for a new trial.

The testimony of the experts as to the distance within which the train could have been stopped was clearly prejudicial. It

presented to the minds of the jury answers to hypothetical questions not framed to meet the conditions under which the engineer worked, and which were no proper basis for a determination of the distance within which that train could have been stopped if the engineer did what he testified he did.   The experts were admittedly unfamiliar with this engine or any engine of this type and the questions did not embrace a consideration of the single brake flange, slippery condition of the rails and the plugging of the sander.   The testimony of the engineer was entitled to credence unless shown to have been improbable or contradicted.   He was the plaintiff's witness and the burden of proof was on the plaintiff. He was not contradicted by affirmative proof as to the blowing of the whistle or as to his efforts to stop the train.   The only tests of the truthfulness of his story presented to show the improbability of his having thrown on the emergency brake when he said he did, are the testimony of the experts as to the distance within which he ought to have stopped under such circumstances and the testimony of some of the witnesses that the shock usually incident to the use of the emergency brake was not felt.   This is explained by the absence of sand and the slippery condition of the rails, which would also account for the distance the train traveled after hitting her.   There was a question to go to the jury on the absence of shock but it was unfair to let the jury test the probability of the truthfulness of the engineer's story by supplying the false guide of the expert testimony as to the distance within which a totally different engine could have been stopped.   The prejudice which the defendant suffered by reason of that testimony is sufficient ground for reversal, standing alone.

The doubt which comes to my mind is in relation to the approval of the requested charges.   I fear that there may be error in this. Take the first one:   " I will ask your Honor to charge that if the jury find that immediately upon discovering that this girl was on the track and not likely to get off in time, the engineer did sound his whistle and apply his brakes, he was not guilty of any wanton, or willful, or reckless act."

When the engineer discovered this girl on the track it became his duty to exercise reasonable care under the circumstances to avoid a collision.   (*Feldman* v. *N. Y. C. & H. R. R. R. Co.*, 142 App. Div. 339; affd., 205 N. Y. 553; *Bragg* v. *Central N. E. R. Co.*, 228 id. 54; *Chrystal* v. *Troy & Boston R. R. Co.*, 105 id. 164.)

Lack of reasonable care after discovery of a person in peril amounts to recklessness.   If this be true, then it is improper, it seems to me, to hold as a matter of law that the mere blowing of the whistle and putting on the brakes, without adding " in a

reasonably prudent manner '' or without describing in detail what the engineer said he did, is erroneous, because it leaves out of consideration the manner in which the whistle was blown and in which the brakes were applied. A whistle might have been shrill and penetrating or otherwise. One short blast might not have been enough. Brakes might have been applied slowly and gradually in a manner which the jury might hold to have been negligent, or the emergency brakes might have been immediately applied. It is true that the engineer's testimony, if believed, showed satisfactorily, as I see it, that he did both of these things in a reasonably prudent manner but the question did not embrace that qualification, either by description or in general terms. The jury might have understood that counsel for the defendant meant to refer to the acts of the engineer as testified to by him or they might have understood that any whistle or any application of the brakes was sufficient if the other evidence in the case appealed to the jury and should lead them to believe that he had applied only his service brake. In sending this case back we ought to call attention to this weakness rather than to put the stamp of our approval upon this request to charge in *hæc verba.*

The second request to charge by defendant's counsel was: '' I will ask your Honor to charge that the engineer was not bound to try to stop this train the instant that he saw the deceased upon the bridge, but that he had the right, in broad daylight, if his train was perfectly visible and its approach apparently heard and known, to assume, at least in the first instance, that this girl would get off the track.''

While in an ordinary case of a trespasser upon a railroad track this would be the correct rule, it is questionable whether it applies to this case, not because she was a young girl, a thing which he could not know when he first saw her, but because she was upon a bridge with which he was perfectly familiar, over which ran a single track, with no walk for pedestrians at the side and which rendered it extremely difficult if not impossible to quickly step aside into safety as would be the ordinary case of a track walker. Such a request assumes that the person on the track could quickly step off the track into a place of safety. It assumes a condition upon which reasonable minds could differ here and I think it is dangerous to apply it to the facts of this case.

COCHRANE, P. J., concurs.

Judgment and order reversed on law and facts and new trial granted, with costs to appellant to abide event. The court disapproves of the finding that the defendant was guilty of negligence.