Paul T. D’Amaro J.
Upon the close of People’s case, the defendant has moved this court to grant a trial order of dismissal.
THE FACTS
On March 15, 1973, at 8:43 p.m., a passenger train of the L.I.RR, traveling eastward struck the rear of a standing, unattended freight train. One passenger died, and more than a score of others were injured. The defendant, Roy W. Tate, was the engineer of the passenger train.
This tragic incident took place on a foggy night beyond the easterly end of the Ronkonkoma station, the last stop scheduled on the train’s run from Hicksville. Shortly thereafter Mr. Tate was indicted for the crime of criminally negligent homicide in that he allegedly operated the train in such a manner as to cause the collision which was the alleged proximate cause of death of Margaret Brehm, a passenger.
A stream of witnesses for the prosecution and numerous exhibits were offered to prove the following facts:
1. That the train’s journey from Hicksville to a point west of the Central Islip Station (the stop prior to Ronkonkoma) was routine and uneventful.
2. That a substantial piece of debris struck the undercarriage of the train while approaching Central Islip Station.
3. That the train was brought to a routine stop at Central Islip Station but a brakeman on the train, alerted by a hissing sound, discovered a disconnected main reservoir hose.
4. That, in order to connect same, the brakeman cut off the air pressure to what he had every reason to believe was the main reservoir hose while another crewman made the connection.
5. That, in fact, because of a defective mechanical installa *8 tion at the yard, the air for the air brake hose was disconnected.
6. That the conductor in charge of the train was advised of the disconnection and repair.
7. That a delay was incurred after which the conductor signalled the engineer to proceed.
8. That the engineer (defendant) was not advised of the reason for or nature of the delay.
9. That as a result of cutting off the air brake while attempting to make repairs, which resulted from the defective mechanical installation at the yard, one half of the train’s braking system was rendered inoperable.
10. That the train proceeded normally out of Central Islip, eastbound to Ronkonkoma and soon attained a speed of approximately 60 miles per hour.
11. That between Central Islip and Ronkonkoma, a certain railroad "approach signal” No. 470, conveyed a signal to the defendant. The significance of the approach signal was a notice that the train was on its approach to the next station. The rule of the railroad company relating to the significance of the signal indicated that the engineer was to "at once” reduce speed to 30 miles per hour. Several witnesses indicated that a rigid interpretation of the rule required the immediate application of brakes at the signal; others indicated it did not require the immediate application of brakes but only to slow down leaving it to the judgment of the engineer.
12. That, according to the evidence of an engineer-trainee who shared the locomotive cab with the defendant, the defendant did not apply his brakes at the signal but attempted to reduce speed by hitting the brake at some point distant therefrom. Upon hitting the brake the defendant received little or no response from the system and thereupon he applied the emergency brake.
13. The emergency brake reduced the speed of the train, but the reduction was insufficient to stop the train. It proceeded at about 30 to 35 miles per hour through the station, past a stop signal and into the rear of the unattended, freight train which stood on the passenger line track.
14. That the engineer, sensing the imminent collision, ordered the apprentice to jump from the cab.
15. That the defendant had 19 years of experience and had made this same run hundreds of times before in a manner so *9 as to provide smooth and comfortable rides to the passengers, without incident.
16. There was no evidence introduced to establish that because of the manner in which the defendant was operating the train he could not have stopped at the station comfortably, were it not for the intervening brake failure.
CONCLUSIONS OF LAW
The question to be determined on this motion is simply this: have the People presented evidence sufficient to sustain a jury verdict of guilty of criminally negligent homicide beyond a reasonable doubt?
The elements of this crime to be determined by the jury are twofold. First, was the defendant guilty, by commission or omission, of criminal negligence? Secondly, if the defendant was criminally negligent, was such negligence the proximate cause of Mrs. Brehm’s death?
Subdivision 4 of section 15.05 of the Penal Law defines criminal negligence as follows: "A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.” (Emphasis added.)
Of course, as the engineer of a public conveyance of great size, weight and passenger capacity, defendant’s conduct should be examined in the context of the more specialized standards of care, applicable to his profession.
In essence, the People are bound to prove that the defendant failed to perceive the risk in a situation where the defendant has a legal duty of awareness (see People v Haney, 30 NY2d 328).
It would be enough to prove that defendant knew or had reason to know of circumstances which would bring home, to the realization of the ordinary reasonable man, the highly dangerous nature of his conduct. In this case, the offending conduct was the alleged failure of the defendant to apply the brakes at a point sufficiently distant from the station to come to a safe stop in Ronkonkoma.
*10 Clearly, by the prosecution’s evidence, the defendant had no knowledge of or reason to know of, the loss of one half of his brake system. When he reached the warning signal, he apparently initiated the same procedures for slowing the train that had been used by him and others previously and which had earned for him the reputation of being the "best brake man of the railroad”.
Upon his realization that the brake system was faulty he employed the emergency brake. Unfortunately, this procedure was insufficient to avoid colliding with the standing freight train.
The prosecution presented, in its effort to establish the standard of care that a reasonable person would observe, the L.I.R.R. rules concerning the required response to a signal such as signal No. 470. Neither the rule itself, nor the consensus of People’s witnesses as to the interpretation thereof, convinced this court that Mr. Tate was required to apply the brakes immediately upon reaching the said signal. The applicable rule calls for the immediate reduction of speed to 30 miles an hour. How this is to be accomplished and within what distance is not indicated but left to the vagaries of either good judgment or interpretation. Mr. Tate initiated the same procedures which had always accomplished that reduction of speed when the brake system was fully operable.
It is therefore questionable whether the defendant was even guilty of ordinary negligence. It is helpful to revert to the civil law regarding the establishment of negligence and several authorities could be relied on as applicable to the case at bar. From all the evidence adduced during People’s case, one fact is clear, to wit, that factors contributing to this accident are attributable to persons other than the defendant. The presence of the freight train on the passenger line, the improper mechanical installation which took place at the railroad yard, the action of the conductor in sending the train on its way from Central Islip to Ronkonkoma without calling for a brake test, are but several of the aforesaid contributing factors, any of which could be considered possible causes of the accident.
In Lipinsky v City of New York, (11 Misc 2d 734, 735, affd 8 AD2d 600), it was held that where "there are several possible causes of an injury, for one or more of which defendant is not responsible, and it is just as reasonable and probable that injury was the result of one cause as the other, plaintiff cannot have recovery”.
*11 In the case of Quinones v Hotel Robert Burns (22 Misc 2d 729), the court states: in order to recover for wrongful death, the death must have resulted as a direct and proximate consequence of negligence, unbroken by any independent intervening cause, and the ultimate happening complained about must have been capable of being foreseen by a reasonably prudent and careful person, under the circumstances.
And finally, in a factual situation quite similar to the one involved in this case (Capitula v New York Central R.R. (200 App Div 247, 249-250) the court stated: "It appears from the evidence * * * that he used his best effort and judgment in what he did under the circumstances under the circumstances existing at the time and place * * * I cannot see where he can be charged with even a faulty judgment. Acting with promptness and in accordance with his best judgment, doing what he could to avert the accident, but failing, he should not be chargeable with the death of this girl”.
The Penal Law does not demand that a person take precautions against unknown conditions. Mr. Tate did not know, nor did he have reason to know, of circumstances which would bring to the realization of a prudent railroad engineer that his conduct was of a highly dangerous nature. In short, he was not criminally negligent and there was no issue to be determined by the jury.
The defendant herein used good judgment and showed courage under perilous circumstances. He suffered injury because he didn’t "bail out” in sufficient time to save himself. Mr. Tate has been subjected to the ultimate test of placing his future on the line by the ordeal of trial. This court has the power to“ resolve that issue. What this court cannot accomplish is to atone for the years of anguish, shame and discredit suffered by the defendant. The defendant was discharged by his employer and left to wend his way in a world where skills developed throughout his life were not a saleable commodity. Mr. Tate needs the L.I.R.R. and this court believes the L.I.R.R. needs the Mr. Tates of this country. It is hoped that good judgment will prevail.
The motion is granted, indictment dismissed.