## Fred Norman v. Homer Bartholomew, by His Next Friend.

1. TRESPASSERS—*Where Person is Injured While Trespassing.*— Where a child is a trespasser upon the private property of another and is thereby injured, his rights are to be adjudicated under the general rule applicable to adult trespassers, and the owner owes no such duty to the injured party as will render him liable for the injury received as a consequence of the party's own unauthorized act.

**Trespass on the Case,** for personal injuries.   Appeal from the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge presiding. Heard in this court at the May term, 1902.   Reversed.   Opinion filed November 24, 1902.

REDMON & HOGAN, and C. C. LEFORGEE, attorneys for appellant.

I. A. BUCKINGHAM, J. M. GRAY and H. H. CREA, attorneys for appellee.

MR. JUSTICE BURROUGHS delivered the opinion of the court
This was an action on the case brought in the Circuit

Court of Macon County by the appellee, Homer Bartholomew, a minor, by Sue Bartholomew, his mother, as next friend, against the appellant, Fred Norman, to recover damages for the loss of appellee's arm alleged to have been occasioned by the negligence of the appellant. The case was tried by jury and resulted in a verdict in favor of the appellee for $7,500, which, on motion of the appellant, was set aside and a new trial granted. It was afterward again tried by jury and resulted as before, except that the damages were assessed at $3,000, and after overruling a motion by the appellant for a new trial, the court gave judgment on the verdict. The appellant brings the case to this court by appeal, and to effect a reversal of the judgment argues, among other alleged grounds, that the verdict and judgment are contrary to the evidence and the law applicable thereto.

The declaration as amended contained three counts. The first charged in substance, that the defendant, Fred Norman, owns a certain building, designated as 234 North Main street, in the city of Decatur, Illinois, which he uses and occupies as follows: the first floor as a barber shop, the second floor as bath parlors, and the third, fourth and fifth floors for laundry purposes; that said building is a part of a block known as the "Syndicate Block," all of which, except defendant's building, is divided into stores upon the first floor, and above the first floor into rooms for offices and rooming purposes; that upon each floor of said block, exclusive of the building owned and occupied by the defendant, is an inner court around which is located said offices and other rooms, all of which is lighted by a skylight at the top of the court; that in the front room of the third floor of defendant's building there are two mangles or machines, one large, the other small, both used for ironing purposes; the larger one occupies the west end of the room and the smaller one being about twenty feet east of it and near to and opposite a certain door leading from the room to the court upon the third floor of the block; that the smaller mangle is constructed principally of one large

steam-heated iron roller and three small iron rollers, and when in operation, the large roller revolves in one direction and the small roller in the other, so that the washed articles enter the mangle on the west side and are carried along the surface of the large roller while being pressed by the small rollers until they drop upon a table on the east side of the mangle or are taken by an operator; that to direct the carrying of the washed articles through the rollers of the mangle properly, there are six belts made of twine, which travel through the rollers of the mangle with the washed clothes; that the door leading from the room where the mangles are, into the court, is frequently open, and children of the parents living in the rooms of the "Syndicate Block" are accustomed to romp and play in the floor space about the court, and, with the knowledge and consent of the defendant, such children were permitted to enter from the court into the room where the mangles were in operation; that the defendant, knowing the dangerous character of the smaller mangle, carelessly and negligently permitted certain of such children of the ages of eight to nine years to operate the small mangle by feeding towels into it on the west side and receiving them on the other side after passing through it; that said mangle, by reason of the revolving rollers, was attractive to children and appealed to their childish curiosity; that the plaintiff lived with his mother, Sue Bartholomew, who is his next friend in this suit, upon the fourth floor of that part of the "Syndicate Block," devoted to offices and rooms, and had lived there since he was four and a half years old, and was living there at the time of the accident hereinafter complained of, at which time he was eight and a half years old; that during the time the plaintiff lived in said block, he played almost constantly with other children upon the third floor of the court aforesaid; and during week days was in the laundry part of the building of the defendant which contained the small mangle aforesaid; that the plaintiff distinctly remembers of being in said laundry room together with other children and of seeing the defendant also there at the same time; that at no

time was the plaintiff ever warned by the defendant that the small mangle was a ·dangerous machine to be about; that the defendant encouraged the plaintiff and other children to use the small mangle, and the plaintiff with other little children of about the same age, did many times work about the small mangle by feeding towels through the same and receiving them after they had passed through it, at some of which times, the defendant supervised them while so doing; that at no time while the plaintiff so worked about said mangle, did the defendant warn the plaintiff of the dangerous character of the same; and that there were no cards of any character posted on the walls warning operators and others of the dangerous character of the small mangle, or other machinery in said room.

And plaintiff avers that upon January 6, 1900, at 6:30 o'clock P. M., when he was eight and one-half years old, the defendant carelessly and negligently permitted him to be on the east side of said small mangle while it was in operation, at which time the plaintiff noticed that one of the twine belts, heretofore described, had broken and become untied, and in endeavoring to repair same, with due care and caution for a child of his age, reached over the top of the small roller on the east side of said mangle to secure one end of the twine belt, when, in some manner, his left hand was caught between the small rollers and the large roller of the mangle and was carried through between them, crushing and burning his left arm in such a manner that it had to be amputated near the shoulder.

The second count charges, in substance, that on January 6, 1900, the defendant was possessed of, using, operating and controlling a steam laundry in a building located at No. 234 North Main street in the city of Decatur, Macon county, Illinois; that said laundry at that time contained a large number of pieces of dangerous machinery, among which were two mangles, one of which was smaller than the other; that the small mangle was located about thirty-five feet from the west end of a room on the third floor of said building, and consisted of interlocking cog wheels,

revolving rollers, and was of a character to be attractive to children and appeal to their childish curiosity; that the dangerous character of the small mangle was well known to the defendant, and yet he carelessly and negligently permitted and allowed children of the ages of eight and nine years to play about the same without giving them any warning of the danger of so doing; that the plaintiff and other children of approximately his own age, to wit, eight and one-half years, for two months prior to the 6th of January, 1900, were accustomed to work about said mangle, both in feeding towels into the same, and receiving the same upon the opposite side thereof; which employment was under the supervision, and done with the consent of, the defendant; that at such times the defendant did not apprise the plaintiff, or such other children, as to the danger there might be in connection with the work being done by the plaintiff, and the plaintiff did not realize the dangerous character of such work; that on January 6, 1900, at 6:30 o'clock P. M., when the plaintiff was eight and one-half years old, the defendant carelessly and negligently permitted him to be on the east side of the small mangle while it was in operation, when the plaintiff observed a certain twine belt upon said mangle had become broken and untied; that the plaintiff, in endeavoring to repair said belt, reached over the roller on the east side of the small mangle, to secure one end of the twine composing the belt, and in some manner his hand was caught between a small roller and a large heated roller composing a part of the small mangle, and it and his left arm were carried through the rollers the full length of the arm, thereby crushing and burning it to such an extent that it was necessary to amputate it near the shoulder.

And the third count charged about the same facts as the second, and also alleged that at the time the plaintiff undertook to reach for the end of the belt " the small mangle was carelessly and negligently, and contrary to the usage and custom of said laundry, put in operation."

The defendant pleaded not guilty.

The evidence shows that the appellant operated a laundry in the building substantially as alleged in the declaration, and had the two mangles described in a room on the third floor thereof as alleged; that the room where the mangles were is connected with the court of the adjoining buildings of the block by a door as alleged, and that the appellee and his mother lived in a room on the fourth floor of the "Syndicate Block," as charged in the declaration.

On the evening of January 8, 1900, the plaintiff was quarreling with another boy up on the fourth floor of the "Syndicate Block," when plaintiff's mother, who was the forewoman of appellant's laundry, for the purpose of separating the boys, called her son into the mangle room of the laundry and told him to sit near the small mangle until she finished her work. She then continued at her work, not noticing the plaintiff, and about twenty minutes after the plaintiff had come into the mangle room, he discovered that one of the string belts of the small mangle was untied, and he undertook, of his own motion, to get the ends of the belt together and tie it, and while in the act of so doing his hand got caught in the revolving rollers of the mangle, drawing his left arm in and crushing it in such a manner that it had to be amputated.

At the time the mother called the appellee into the mangle room, and up to the time he was hurt, the appellant was not there, but was away at supper.

The mangle in which the appellee was hurt was in a safe condition to be operated and of the kind usually employed in steam laundries.

Before the appellee received his injuries, he and other children living in the "Syndicate Block" sometimes came into the mangle room to play and at times assisted the employes about the mangle, but were not employed to do so by the appellant, and the work they did in so assisting did not expose them to any great danger of being injured by the mangle nor could the appellee have been injured as he was without having extended his hand some distance into the mangle to reach the rollers for the purpose of getting the end of the broken belt.

Norman v. Bartholomew.

At the close of the evidence for the appellee and again at the close of all the evidence, the appellant prepared and requested the court to give the jury written instructions to find the defendant not guilty, which the court refused, and the appellant excepted.

The theory upon which the declaration is drawn and upon which the counsel for the appellee tried this case in the Circuit Court is that the appellant was negligent in permitting the appellee, a boy of tender years, to be about the mangle which hurt him; that it was dangerous for children to be near, and was attractive and inviting to them, all of which was well known to the appellant, and yet he neglected to warn the appellee to stay away from it or to inform him of its being dangerous. And they contend that under the evidence, the judgment against the appellant in this case ought to be affirmed under the rule established and known as the "turn-table" cases. City of Pekin v. McMahon, 154 Ill. 147, and Siddall v. Jansen, 168 Ill. 43.

But in that view we can not concur, for the reason that the ground of liability in the "turn-table" cases is "that the child can not be regarded as a voluntary trespasser, because he is induced to, come upon the turn-table by the defendant's own conduct." City of Pekin v. McMahan, *supra*. In the case at bar the appellee was induced to come into the mangle room upon the occasion in question, by the invitation of his mother, who called him there to restrain him from quarreling with another boy while she worked, and was not induced to go there on account of being attracted by the mangles or other laundry machinery, therefore he is in no position to invoke the rule of the "turn-table cases." Union Stock Yard & Transit Co. v. Butler, 92 Ill. App. 166, and American Advertising & Bill Posting Co. v. Flannigan, 100 Ill. App. 452.

There is no disposition on the part of the courts to extend the doctrine of the "turn-table" cases to cases not clearly within the rule governing them. In Wabash R. R. Co. v. Jones, 163 Ill. 167, Jones was eight years and ten months old when he was injured while trespassing upon the track

of the Wabash railroad, and when he sought to recover damages from the railroad company for his injuries alleged to have been inflicted by reason of the negligence of the servants of the company in not discovering him on the tracks or in avoiding injuring him after he was so discovered, it was urged in his behalf, that by reason of his tender years, he should not be held to the consequences of a trespasser, as the company had, before his injury, permitted him and other persons to use the track at the place in question without objection. But the Supreme Court held that Jones was a trespasser upon the private property of the company and his rights were to be adjudicated under the general rule applicable to adult trespassers. Under the undisputed facts in this case, the appellant owed no such duty to the appellee as rendered the appellant liable for an injury which the appellee received as a consequence of his own unauthorized act, done in a reckless manner, which the appellant had no reason to expect and consequently is not responsible for.

It seems manifest to us that it would be absurd to hold that the appellant should have warned the appellee of the' dangerous character of the mangle under the circumstances disclosed by this record, when the mother of the appellee under whose special care he was at the time he was injured, with full knowledge of the character of the mangle, had voluntarily required her son, in order to shield him from a quarrel with another boy, to remain near to the mangle, thus showing that she did not regard the mangle as being so dangerous, and yet inviting to the childish instinct of her son, as to require her to warn him of its danger, or to refrain from causing him to sit near to it unrestricted.

Being of the opinion that the verdict and judgment in this case are contrary to the evidence and the law applicable thereto, and that the appellant is not liable to the appellee for the loss of his arm under the undisputed facts of this case, we deem it unnecessary to consider the errors assigned calling in question the correctness of the rulings of the trial court upon the reception and rejection of evidence, and upon the instructions, and we will reverse the judgment with a finding of the facts.

Norman v. Bartholomew.

**Finding of Facts.**—This court finds as a part of its judgment that the appellant is not guilty of the negligence charged in the declaration, and that the appellee was in the said room of the appellant when he received the injury for which he sues in this case, by the express invitation of his mother, and not by the express or implied invitation of the appellant.