## Myer, Jr., By, et al. v. Union Light, Heat & Power Company.

(Decied December 20, 1912.)

### Appeal from Kenton Circuit Court (Common Law & Equity Division).

Electricity—Dangerous Instrument—Liability of Owner for Injury Thereby.—The owner of a dangerous instrument is not liable for

an injury occasioned thereby, if it is located in a place that is not attractive and inviting to children and other persons and where they do not pass or congregate with the knowledge of the owner, or where it cannot be reasonably anticipated that they will pass or congregate.

MYERS & HOWARD for appellant.

ROBERT C. SIMMONS for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellee was paid for lighting a church on Fifth street in the city of Covington, and for the purpose of doing this, it suspended its electric light wires from near the top of the building, down the east wall thereof, through a transformer which was located within about one and a half feet of the ground, and then into the basement of the building through a window directly under the transformer. This transformer, as we understand it, was for the purpose of regulating the electric current going into the building. There was built, we presume by the church people, on the east side of the church building, a brick wall about seven feet and eight inches high. This wall began at the northeast corner of the building, extended east several feet to a board fence, thence ran south to a point where it connected with another wall of the church building, thus enclosing a small yard wherein appellee's electric wires and transformer were located. The board fence which was about three feet lower than the brick wall, connected with the northeast corner thereof and continued on the same line as the north wall of the small enclosure. It appears that for about two years prior to the injury herein complained of, loose rock had been piled up against the rear of this brick wall and board fence, to a depth of about three feet; that by going upon this rock, then to the top of the board fence, then to the top of the brick wall, an entrance could be easily had into this yard by going down a plank, one end of which was resting upon the ground within the yard and the other against and near the top of the wall. Appellant, who was about ten years of age at the time, and another little boy were playing ball in the vacant lot which was immediately back of the wall and board fence; one of them threw the ball and it fell into the church yard and stopped at a point near appellee's

wires and transformer. Both of the boys started after the ball but appellant reached it first, picked it up, started to return to his play, but stumbled in some way, lost his balance and in an attempt to save himself from falling, caught hold of the electric wires with his right hand, and the electric current burned his fingers, thumb and arm; rendered him unconscious for a time and crippled him for life.

Appellant instituted this action by his next friend to recover for his injuries which he alleged were caused by appellant in negligently placing its wires and in leaving them unguarded, as they were dangerous, and further in allowing the insulation on the wires to become so decayed that it dropped off leaving the wires exposed, thus rendering them more dangerous.

The testimony, without contradiction, showed the facts above stated and that a number of children, before and after school hours and on Saturdays, used this vacant lot for a playground; that they would frequently enter the churchyard in playing their games; that this had been going on for at least two years prior to appellant's injury, and that none of them knew, especially appellant, that there was any danger in touching appellee's wires or transformer. Appellant's testimony showed that the transformer should have been placed twelve or fourteen feet above the ground, instead of within one and a half feet thereof; that the wires should have been incased in a pipe of some kind or guarded by a netting in some way so that a person could not come in contact with them, and that the insulation on the wires should have been kept in repair.

At the conclusion of the testimony, upon appellee's motion, the court gave the jury a peremptory instruction to find for appellee. This instruction was given upon the idea, as we understand it, that there was not the slightest proof showing that any one connected with appellee, or any of the church people, for that matter, had any knowledge or information that appellant or any of the children mentioned, had been in the habit of entering this churchyard, or that they had entered it at all for any purpose.

Appellant's counsel contend that the case should have been submitted to the jury, as the boy's testimony showed that appellant had so placed and left its wires and transformer as to render them dangerous; that the court had a right to assume that appellee knew of, or

at least had a right to anticipate, the use of the yard by the boys, as the proof showed that it had been so used without objection from any one, for the past two years. He further contends that the placing and leaving of the wires and transformer for more than two years, as heretofore discribed, was of itself actionable negligence on the part of appellee, and that if appellee had given them the attention required by ordinary care, it would or must have known of the passway into the yard and that the children were using the yard for play. For these reasons, he claims he was entitled to an instruction authorizing the jury to find for him, if appellee knew of or had reasons to anticipate that the boys were in the habit of using the churchyard. This is the real question in the case, and it is one not easy of solution.

As stated, there is not the slightest testimony showing that appellee had any knowledge or information that the boys were in the habit of entering the churchyard from the adjacent lot when playing there; nor had it any reasons to anticipate their going into the yard, except that boys of their age might be expected to go into any enclosure they could enter.

The rule of law governing such cases has not been extended as far as claimed by appellant's counsel. The "Turn Table Doctrine" was established upon the idea that something dangerous to children had been constructed at a place where children were in the habit of passing or congregating or at a place easy of access and inviting to children, and that these facts were known to the owner of the dangerous structure. In the case of Bransom's Admr. v. Labrot, &c., 81 Ky., 638, the administrator was allowed to recover for the death of a child which was caused by the overturning of a lumber pile, and the court quoted with approval, in that case, from Hargrave v. Deacon, 25 Mich., 1, the following:

" 'The owner of private grounds is under no obligation to keep them in a safe condition for the benefit of trespassers, idlers, bare licensees, or others who may come upon them, not by invitation, express or implied, but for pleasure or to gratify their curiosity, however innocent or laudable their purpose may be.' "

That opinion proceeded, however, by saying that the rule quoted did not apply to that case, as the lumber pile had been situated on the lot for many years and, by license of the owner, the lot was used by the public

as a passway and by the children as a playground, meaning, of course, if the lot where the lumber was piled had not been so used with the knowledge of the owner of the lumber, the rule quoted would have applied. The cases announcing this doctrine, do it upon the idea that the dangerous instrument is attractive and inviting to children and that the owner thereof, for these reasons, might have reasons to anticipate that children would congregate at the place the thing is located and receive injuries. That rule cannot be applied in the case at bar, as there was nothing attractive about the place where the boy was injured. He went there for the purpose only of securing his ball. The enclosure was simply a small yard by the side of the church building and was enclosed, as heretofore described, without any doors, gates or other opening to permit ingress. It was not shown that appellee or any person in charge of the church and yard had any knowledge or information of the stone or rock being piled up against the fence and brick wall, or that there was a plank placed on the inside of the enclosure so that the boy could go from the top of the wall to the ground inside the yard.

The case of Graves v. Washington Water Power Co., (Wash.) 11 L. R. A. (N. S.) 452, is very similar to the one at bar. In that case a boy fifteen years of age climbed up a pier of a bridge a distance of about thirty feet where he was injured by coming in contact with a wire charged with electricity. The claim was made that the braces on the pier formed a kind of lattice work which served as a ladder and made the structure an attractive one to the boy who, it is asserted, went up to a point where pigeons nested and received his injury as stated. In that case the court refused to allow the boy to recover, and said:

"The things which constituted the attraction which it is claimed drew him to this place were features connected with the river, the bridge, and the pigeons, and were matters for the existence of which appellant was not responsible." In the case at bar, the boy's only attraction to the place where he was injured was the recovery of his ball.

The case of Mayfield Water & Light Co. v. Webb's Admr., 129 Ky., 395, is also very much like the case under consideration. In that case a little boy was killed by coming in contact with an electric wire strung on poles eighteen feet above the ground. He reached the wire by

going up the guy wires and the pole. This court said the owner need not anticipate that children will reach such wires by climbing poles or walking up guy wires. In that case the wire at the point where the boy was injured, was defective and this makes the case peculiarly applicable to the case at bar.

It follows that the lower court did not err in giving the peremptory instruction, as appellee's transformer and wires were located inside the yard which was enclosed by a solid brick wall seven feet and eight inches high and it had neither actual nor constructive notice of any use of the premises by any one.

Judgment affirmed.