[Civil No. 3105.   Filed June 1, 1932.]

[11 Pac. (2d) 839.]

SALT RIVER VALLEY WATER USERS' ASSOCIATION, a Corporation, Appellant, v. JAMES COMPTON, By and Through JAMES W. COMPTON, His Guardian *Ad Litem,* Appellee.

For former opinion, see 39 Ariz. 491, 8 Pac. (2d) 249.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellant.

Messrs. McNabb & DeCamp, for Appellee.

LOCKWOOD, J.—Counsel for plaintiff in briefing their motion for a rehearing have not called to our attention a single point not covered in their original brief and argument, or not considered by us before rendering our decision. They have most ably and exhaustively presented again their original contentions

as to the principles of law which they believe should govern the case at bar, and courteously but firmly insist that we have failed utterly to grasp the meaning of the cases on which they rely and have ignored their applicability to the circumstances of this case.

We think counsel in their natural and indeed commendable zeal for their client have either never understood, or else have disregarded, certain fundamental and vital principles underlying the law of negligence, and because of that fact, most of their brief is devoted to an attempt to induce us to indorse certain rules of law which we have already approved in our original opinion, while the remainder urges a conclusion which is a *non sequitur* from these rules, when considered with the more fundamental principles which they disregard or misunderstand.

We therefore state briefly these principles that we may point out the fallacy involved in plaintiff's argument.

This is an action to recover damages for an injury received by plaintiff through the alleged negligence of defendant.

The first and fundamental principle of substantive common law governing such actions is that, where one is injured by the negligence of another who owes him the duty of refraining from such negligence, the injured person may recover damages from the one owing such duty. The proposition is so elementary that we cite no authorities in support thereof.

Now it will be seen that there are two essentials which must exist in order to create liability: (a) Duty to the injured party; and (b) a violation of that duty by the defendant. Either one without the other is insufficient.

In determining whether a duty exists, it may be necessary to consider many things, but among the most important is the place where the accident occurred, and it is almost universally held subject to cer-

tain qualifications, which we shall discuss later, that a trespasser cannot recover from the owner of the place where he is trespassing, for injuries received thereon as a result of the negligence of such owner, unless the negligence is wilful or wanton; or, to put it more simply, an owner owes no duty to a trespasser except to refrain from wilful and wanton negligence. *Conchin* v. *El Paso etc. Ry. Co.*, 13 Ariz. 259, 28 L. R. A. (N. S.) 88, 108 Pac. 260; *Giannini* v. *Campodonico,* 176 Cal. 548, 169 Pac. 80; *Bremer* v. *Lake Erie etc. Ry. Co.*, 318 Ill. 11, 41 A. L. R. 1345, 148 N. E. 862; *Weitzmann* v. *A. L. Barber Asphalt Co.*, 190 N. Y. 452, 123 Am. St. Rep. 560, 83 N. E. 477; *Gypsy Oil Co.* v. *Ginn,* 88 Okl. 99, 212 Pac. 314.

And the owner or person in charge of property is not under any duty to protect trespassers thereon from injury. *Erie Ry. Co.* v. *Hilt,* 247 U. S. 97, 62 L. Ed. 1003, 38 Sup. Ct. Rep. 435; *Hynes* v. *New York Central R. Co.*, 231 N. Y. 229, 17 A. L. R. 803, 131 N. E. 898; *San Antonio etc. Ry. Co.* v. *Morgan,* 92 Tex. 98, 46 S. W. 28. Or to prevent them from getting into a place or situation of danger. *O'Leary* v. *Brooks Elevator Co.*, 7 N. D. 554, 41 L. R. A. 677, 75 N. W. 919; *Gypsy Oil Co.* v. *Ginn, supra.*

The reason is obvious. It would be intolerable that one who would not have been injured save for his own unlawful act may penalize another. The rule is so plainly founded upon principles of natural justice and equity that it is almost universally accepted; the only apparent exception being in cases where the court has reached a correct conclusion, but stated the wrong reason therefor, or else has, as even appellate courts do at times, allowed sympathy for the injured party in the particular case to obscure the far more disastrous result in other cases of the adopton of a wrong principle of law.

This as a general principle applies to adults and children alike. *Heller* v. *New York etc. Ry. Co.,*

(C. C. A.) 265 Fed. 192, 17 A. L. R. 823; *Norman* v. *Bartholomew,* 104 Ill. App. 667; *Papich* v. *Chicago etc. Ry. Co.,* 183 Iowa 601, 167 N. W. 686; *Nicolosi* v. *Clark,* 169 Cal. 746, L. R. A. 1915F 638, 147 Pac. 971; *McDermott* v. *Burke,* 256 Ill. 401, 100 N. E. 168; *Blakesley* v. *Standard Oil Co.,* 193 Iowa 315, 187 N. W. 28; *Ellington* v. *Great Northern Ry. Co.,* 96 Minn. 176, 104 N. W. 827; *Walsh* v. *Fitchburg R. Co.,* 145 N. Y. 301, 45 Am. St. Rep. 615, 27 L. R. A. 724, 39 N. E. 1068; *Wheeling etc. Ry. Co.* v. *Harvey,* 77 Ohio St. 235, 122 Am. St. Rep. 503, 11 Ann. Cas. 981, 83 N. E. 66, 19 L. R. A. (N. S.) 1136; *Faurot* v. *Oklahoma Wholesale Grocery Co.,* 21 Okl. 104, 17 L. R. A. (N. S.) 136, 95 Pac. 463; *Barnhart* v. *Chicago etc. R. Co.,* 89 Wash. 304, L. R. A. 1916D 443, 154 Pac. 441.

It was early recognized, however, that to apply it with the same strictness to young children who, while they were technical trespassers, as a matter of fact had no knowledge of what a trespass was, or that it was wrongful to invade the property of others, was a harsh doctrine, and certain qualifications of the rule of nonliability for injuries occurring to children on the property of the negligent person were established.

In determining what these qualifications should be, two conflicting equities were in at least apparent conflict. One is that it is obviously unjust to make the property owner the perpetual watchman and insurer of the safety of all the children in the neighborhood; the other is that he should at least in handling his property consider and guard against certain well-known and innate characteristics of children.

While it is probable that in many earlier cases there was an attempt to reconcile these equities, the case in which the principle which we now discuss was first clearly enunciated was the famous one of *Lynch* v. *Nurdin,* 113 Eng. Reprint 1041. Plaintiff insists this case holds that an infant in a public highway can-

not be a trespasser on an object located in the highway. On the contrary, it holds definitely and specifically that the infant in question when he climbed into the cart standing on the highway was a trespasser. The headnote to the case reads as follows:

"John Lynch, by Elizabeth Lynch, his Mother and Guardian, v. Nurdin, 1841. Defendant negligently left his horse and cart unattended in the street. Plaintiff, a child seven years old, got upon the cart in play; another child incautiously led the horse on; and plaintiff was thereby thrown down and hurt. Held, that defendant was liable in an action on the case, *though plaintiff was a trespasser,* and contributed to the mischief by his own act. And that it was properly left to the jury, whether defendant's conduct was negligent, and the negligence caused the injury." (Italics ours.)

Lord Denman, in rendering the opinion of the court, stated:

"It is urged that the mischief was not produced by the mere negligence of the servant as asserted in the declaration, but at most by that negligence in combination with two other active causes, the advance of the horse in consequence of his being excited by the other boy, and the plaintiff's improper conduct in mounting the cart and so committing a trespass on the defendant's chattel. . . . The plaintiff himself has done wrong; he had no right to enter the cart, and, abstaining from doing so, would have escaped the mischief. . . .

"But the question remains, can the plaintiff then, consistently with the authorities, maintain his action, having been at least equally in fault. The answer is that, supposing the fact ascertained by the jury, but to this extent, that he merely indulged the natural instinct of a child in amusing himself with the empty cart and deserted horse, then we think that the defendant cannot be permitted to avail himself of that fact. *The most blameable carelessness of his servant having tempted the child, he ought not to reproach*

*the child with yielding to that temptation. . . . "*
(Italics ours.)

We think it is impossible to read this case carefully without realizing that it was specifically held that plaintiff was a trespasser, but, because it was the act of defendant's servant which tempted the child to become such, he could not enforce the rule of law that a defendant owes no duty to a trespasser except to refrain from wanton and wilful negligence.

On the simple yet pregnant words we have italicized above has been erected the enormous superstructure of the so-called "attractive nuisance" doctrine. Hundreds if not thousands of cases have claimed to base themselves on these words, and have drawn from them most different and at times astounding conclusions, and yet, if we but hold fast to the idea so clearly expressed therein, we have an Ariadne's thread which will lead us out of the labyrinth. While courts have differed as to the philosophical explanation of the *raison d'être* for the rule, the essential elements are unmistakable if it is to be applied. (a) The defendant must have tempted the child to come on his property; and (b) he must have *yielded* to that temptation.

In every case in which a judgment in favor of a trespassing child injured on the property of the person alleged to be negligent has been upheld, these two elements have appeared, with the possible exception of a very few cases sustainable on no rule of law generally accepted by respectable authority, or where the violation of an express statute was involved.

The courts, however, have uniformly recognized that it is not everything which tempts a child for which the owner of property will be responsible. They realize there is practically no object, natural or artificial, which may not be a great attraction to

*some* child, and that, if the sole test is temptation, regardless of the nature of the object or how it got there, the property owner is in effect an insurer of the child's safety. While different courts have reached different conclusions as to the specific objects which come within the attractive nuisance doctrine, there are certain principles which are quite generally applied.

In the first place, so far as we are aware, there is no case which holds that natural objects not placed on the property by the defendant, are attractive nuisances, while a number of cases hold specifically they are not. *Johnson* v. *Atlas Supply Co.,* (Tex. Civ. App.) 183 S. W. 31; *Fuscia* v. *Central L. & P. Co.,* 2 La. App. 195; *McFarland* v. *Martin,* 90 Pa. Super. Ct. 151; *Myer* v. *Union L., H. & P. Co.,* 151 Ky. 332, 43 L. R. A. (N. S.) 136, 151 S. W. 941.

In the second place, the modern tendency, even in those jurisdictions which have approved the attractive nuisance doctrine, is to limit rather than increase the variety of objects held to be nuisances, and to confine them to things of unusual character, more than ordinary attractiveness, and easily accessible to children by reason of their location. *New York, N. H. & H. Ry. Co.* v. *Fruchter,* 260 U. S. 141, 67 L. Ed. 173, 43 Sup. Ct. Rep. 38; *United Zinc & Chemical Co.* v. *Britt,* 258 U. S. 268, 66 L. Ed. 615, 42 Sup. Ct. Rep. 299, 36 A. L. R. 28; *Salladay* v. *Old Dominion Copper Co.,* 12 Ariz. 124, 100 Pac. 441; *Giannini* v. *Campodonico, supra.*

In the third place, unless the child goes on the property by reason of the temptation of the very instrumentality which is held to be the attractive nuisance, he cannot recover. *Erie R. Co.* v. *Hilt, supra; Giannini* v. *Campodonico, supra; Shaver's Admr.* v. *Louisville G. & E. Co.,* 207 Ky. 180, 268 S. W. 1082; *National Metal Edge Box Co.* v. *Agostini,* (C. C. A.)

258 Fed. 109; *O'Leary* v. *Brooks Elevator Co., supra; Carr* v. *Oregon-Washington R. & N. Co.,* 123 Or. 259, 60 A. L. R. 1434, 261 Pac. 899; *Sweeden* v. *Atkinson Imp. Co.,* 93 Ark. 397, 27 L. R. A. (N. S.) 124, 125 S. W. 439; *Fusselman* v. *Yellowstone Valley Land Co.,* 53 Mont. 254, Ann. Cas. 1918B 420, 163 Pac. 473.

Let us apply these principles to the case at bar. Plaintiff contends that the pole on which he was when he was injured is an attractive nuisance which excused his trespass. We have held that due to its character and location it satisfies the first two conditions above set forth. If, therefore, the third condition appears, plaintiff is entitled to recover. But not only did plaintiff fail to allege and prove that the temptation to which he yielded was the pole; he affirmatively alleged in his complaint and proved by his own positive testimony that it was *not* the pole, but a bird's nest on top of the pole, which was the *temptation* to which he yielded, and that the pole was merely a convenient means of access to the real *temptation.* And we have been cited to no case where the real *temptation* was a natural object not placed on the property by the owner, where the latter was held liable under this doctrine. On the contrary there are several cases involving bird's nests specifically holding there was no liability. *New York, N. H. & H. R. Co.* v. *Fruchter, supra; Graves* v. *Washington Water Power Co.,* 44 Wash. 675, 11 L. R. A. (N. S.) 452, 87 Pac. 956; *Cox* v. *Des Moines Elec. Co.,* 209 Iowa 931, 229 N. W. 244; *Kent* v. *Interstate etc. Co.,* (Ind. App.) 168 N. E. 465.

Plaintiff relies principally on the six following cases: *Clark* v. *Pacific Gas & Electric Co.,* (Cal. App.) 5 Pac. (2d) 58; Id., 118 Cal. App. 344, 6 Pac. (2d) 297; *Stedwell* v. *City of Chicago,* 297 Ill. 486, 17 A. L. R. 829, 130 N. E. 729; *Deming* v. *City of Chicago,* 321 Ill. 341, 151 N. E. 886; *Robertson* v.

*Rockland L. & P. Co.,* 187 App. Div. 720, 176 N. Y. Supp. 281; *Klingensmith* v. *Scioto Valley Traction Co.,* 18 Ohio App. 290; *Znidersich* v. *Minnesota Utilities Co.,* 155 Minn. 293, 193 N. W. 449. Let us consider the facts and the decisions in these cases.

In the Clark case the complaint alleged specifically that the minor therein "was attracted by the steps of said pole line and climbed from the ground to the top thereof." The evidence shows, again quoting from the decision, "the plaintiff picked out the pole in question because it was easy to climb," and the case was tried on the theory that the pole itself was the attraction and invitation which was accepted by the plaintiff. On reading the whole case, together with the citations, it appears that the court was somewhat in doubt as to whether the decision should be based on the fact that the pole was maintained contrary to specific orders of the Railroad Commission of California which had jurisdiction to regulate such structure, or upon the attractive nuisance doctrine. Be that as it may, however, it will be found that on an examination of practically every authority cited in the Clark case, in which recovery was upheld, it appears that there was something dangerous maintained by the defendant upon the premises in question which attracted the child, and that he went upon the premises by reason of the attraction of *such particular instrumentality,* a situation very different from that shown by the pleadings and the evidence in the case at bar.

We consider next the case of *Stedwell* v. *City of Chicago.* Therein the pleading was that the attractive object was a certain latticed pillar or ladder-like structure, which, like the poles referred to in the present case, was easily climbed by children, and the appellate court in passing upon the matter stated that, since the pillar upon which the child was when he was injured was not constructed by and did not be-

long to defendant in that case, he could not invoke the doctrine of trespass. The attractive nuisance doctrine had no place in the Stedwell case, for the reason that the child there was in a place where, so far as the defendant was concerned, he had a right to be, and under no theory was he a trespasser upon defendant's property, again a very different situation from the case at bar.

In the case of *Deming* v. *City of Chicago,* the court says: "This injury occurred in a tree in a public street, and the deceased was, therefore, not a trespasser at the time he was killed"—citing the Stedwell case as authority therefor. If the Stedwell case be considered as an authority for this statement by the court, it can only be on the basis that the tree was not owned by the defendant in the case. In some states it is true that trees in a public street are owned by the city, but in most jurisdictions, and apparently in Illinois, they belong to the abutting property owner. *Barclay* v. *Howell,* 6 Pet. 498, 8 L. Ed. 477; *Town of Palatine* v. *Kreuger,* 121 Ill. 72, 12 N. E. 75; *Old Town* v. *Dooley,* 81 Ill. 255; *Denniston* v. *Clark,* 125 Mass. 216. Obviously again plaintiff was not a trespasser.

There remain then the Klingensmith, Robertson and Znidersich cases. While the language used differs, yet the court in each of these cases does in substance lay down the rule that there can be no such a trespass by a child on an object maintained either legally or illegally in a public street, as will render the owner of that object exempt from liability if the child is injured through his negligence.

If this is a full and correct statement of the law, plaintiff herein unquestionably made a case to go to the jury.

We think, however, that a careful analysis of the reasons given in each case to sustain such a rule will show clearly that, while the ultimate result under the

facts of the particular case might be right, the rule of law stated above cannot be sustained. Two reasons for the rule referred to are given in each case: (a) that the injured child had as much right in the street as the dangerous object; and (b) that the dangerous object is a temptation to children. These reasons must be either conjunctive or disjunctive. If they are conjunctive, reason (a) is immaterial, for admittedly in states which accept the attractive nuisance doctrine, if the dangerous object is really as a matter of law a temptation for which the owner is responsible, whether it be on or off the street does not affect the extent of his liability.

If, on the other hand, they are disjunctive, reason (a) would allow adults injured under similar conditions to recover, for they have just as much right in the streets as children. This shows the fallacy of the reason, for no one would contend an adult injured under the circumstances of this case could recover.

As a matter of fact, we think the courts in the cases cited have confused two very different kinds of situations and the reasons for the rule of law governing each. So long as the person, child or adult, *remains on the highway,* he is no trespasser, and that defense does not apply. When he leaves it, either horizontally or vertically, he is no longer in the highway, but if he is a child he may recover if the facts bring the case within the attractive nuisance doctrine, even though he is a trespasser.

The only way in which the fact that a dangerous object is located in a public place affects liability to a child as distinct from an adult is that the object so situated is more likely to be a temptation than one further away. Things half a mile from the highway might properly be held not to be legal temptations, where the identical things on or near a highway would be such. The courts then should consider the location of the dangerous object, not as bearing on the ques-

tion of *trespass,* but of *temptation,* and realize that a *vertical* removal of the injured person from the highway has the same effect as a *horizontal* one. Such was the holding in *Lynch* v. *Nurdin, supra.*

None of the six cases relied on by plaintiff is authority which will sustain the judgment herein, for the reason that in the first three the child clearly was either fully within the attractive nuisance doctrine as explained by us, or was in no sense a trespasser on defendant's property, and in the last three, the rule of law laid down, which alone would make them applicable to the facts of this case, is unsound.

In this case, if plaintiff relies on the pole as the attractive nuisance, he proved from his own mouth that was not the temptation; if he relies on the bird's nest, it is a natural object for whose presence defendant is not responsible.

The present motion for rehearing illustrates most forcibly the temptation for an appellate court to live up to the old adage that hard cases tend to make bad law. The natural instinct of every humane person to sympathize with the suffering of a child and to search for some excuse to compensate it for an injury, tends to cause appellate judges, as well as jurors, to forget that even such a pitiful situation does not authorize them to mulct a defendant not legally responsible therefor, merely because it is a wealthy corporation and the child would otherwise go uncompensated. Were we empowered to award relief in accordance with our individual emotions in each particular case, so that the rule laid down to-day would be no precedent for the action of to-morrow, it might be that no serious harm would result to any one but defendant herein from an affirmance of liability in the present case, and that a retroactive rule of law, imposing liability where none had previously existed, might be condoned on the ground of moral equities which it is contended appear.

But we can only determine particular cases by the application of general rules which affect all alike, and the rule which we must necessarily adopt to sustain the present action would be such a revolutionary one and impose such uncertainty and unlimited liability on property owners, with no effectual practical method of protecting themselves in the use of their homes, their property or their business, that we feel it should be laid down, if at all, by legislative rather than judicial action.

As a matter of common sense and justice, where instrumentalities so dangerous that the proper application of common-law principles will not adequately protect the public are concerned, the legislature, or a proper administrative body under its supervision, can and should regulate in advance by specific rules the use of those instrumentalities. The owner would then know just what he must do to avoid liability, and there would be no danger that the rules would, as is the case when appellate courts enunciate unsound general principles of law, work grievous injustice in cases never contemplated when they were adopted.

So far as the particular dangerous instrumentality complained of in the case at bar—the poles—is concerned, the legislature can easily and simply safeguard them in the future, if it so thinks advisable. If we penalize defendant for not doing so under the facts of this particular case, we must repudiate many well-established and beneficial principles of the common law and by retroactive judicial legislation in effect burn down the house to drive out the rats. Much as we sympathize with plaintiff in his injuries, we cannot consistently with our duty do anything but deny the motion for rehearing.

ROSS, J., concurs.

McALISTER, C. J., Dissenting.—I am unable to concur in the opinion of my colleagues holding that the original disposition of this appeal was correct and, hence, that the motion for a rehearing should be denied. While I still feel that the order of reversal was proper a closer study of the record for the purpose of disposing of this motion has convinced me that appellee was entitled to judgment and that we were wrong in remanding the case with directions to the trial court to enter judgment for appellant. The order should have been that a new trial be had.

The facts are stated in the original opinion reported in 39 Ariz. 491, 8 Pac. (2d) 249, and will not be restated here in detail. Only those necessary to a proper determination of the appeal, as I see it, will be mentioned again briefly.

The metal poles, on one of which appellee was injured and which appellant erected and maintains in the Salt River Valley, are composed of two pieces of iron set somewhat wider apart at the bottom than at the top and so connected by crisscross irons running from near the ground to the top as to make them in effect ladders upon which persons may climb from the ground to a height of thirty feet. Near the top are attached cross-beams to which are fastened uninsulated, high voltage, copper wires conveying electric current. They have no guards or signs warning people of the danger of climbing them and many of them, through permission of its board of supervisors, were constructed and are maintained in the public highways of Maricopa county, including the one on which this accident occurred. At the top of a number of them birds had built nests and children, including appellee, were in the habit of playing in the public highways near them. They were accessible to and easily climbed by children of immature years as well as by older persons.

On May 23, 1930, appellee, a boy twelve years of age, and two others, one his younger brother and the other, Woodrow Horn, also twelve years of age, were playing in the public highway along the canal when appellee began to climb one of the poles to look into a bird's nest. Following this eight others, not very far apart, were climbed for the same purpose, but whether all or only five of them were climbed by appellee is in dispute, the Horn boy testifying that appellee went up nine and the younger Compton boy that he climbed only five and the Horn boy four. However, when appellee reached the top of the last pole either of them went up he came in contact with one of the heavily charged wires, was badly burned and fell to the ground seriously injured. Appellee testified that he had seen other boys climb the poles and that he did not know that it was dangerous to do so, although other witnesses stated that he had been warned of the danger. He, according to his father, made poor grades in school, being at the time in the sixth grade.

The record further discloses that some years before these poles were erected the Bureau of Standards, United States Department of Commerce, had adopted certain "Safety Rules for the Installation and Maintenance of Electrical Supply and Communication Lines" and issued a handbook under that title containing them. On page 147 thereof under the heading, "Supporting Structures," appears subdivision A–5 reading as follows: "Metal Steps. Steps closer than six and one-half feet from the ground or other readily accessible place shall not be placed on poles." There was testimony in behalf of appellant to the effect that this rule was known to appellant but had become obsolete. The record, however, shows that it had not been changed by the Bureau of Standards and that it had been adopted by nearly all the states of the Union, including Arizona. It was agreed at the

trial that its adoption here, due to certain facts not necessary to mention, did not apply to appellant, and hence, that the failure to comply with it in erecting and maintaining the poles could not and did not constitute statutory negligence.

Appellee contends with much force, however, that under these facts it was a matter for the jury to decide under proper instructions whether it was negligence to maintain in the public highways where children were in the habit of playing these ladder-like poles with uninsulated, highly charged, copper wires fastened to cross-beams near their tops, and I am unable to escape the conclusion that this position is well founded. Keeping in mind that negligence at common law is the failure to do what a reasonable and prudent person would have done under the circumstances, or the doing of something that such a person in a like situation would not have done, the proposition presented is whether by maintaining the poles in the manner pointed out appellant did what a reasonable and prudent person in a like situation would have done; in other words, whether by that act it violated the duty it owed children of immature years to use due care to protect them from coming in contact with the highly charged, uninsulated wires at the top of the poles. There can be no question but that the manner in which they were erected and maintained excluded any possibility of negligence so far as persons of mature mind were concerned, because the wires were securely fastened to the cross-beams thirty feet high where there was no reasonable probability, in fact hardly a possibility, that a person remaining on the ground or in a vehicle of any kind would come in contact with them and where no one who appreciated the danger of electricity and had no reason to climb the poles would do so. But whether this is true where children of immature years are concerned presents a wholly different question, for in that event

a much higher degree of care in maintaining the poles might be required than if older persons only were to be considered. *Talkington* v. *Washington Water Power Co.,* 96 Wash. 386, 165 Pac. 87. In 20 R. C. L., page 37, appears this language:

"A higher degree of care must be exercised toward them (children) than toward persons of mature years. If one knows that such a person is in the highway, or on a railway, he is bound to a proportionate degree of watchfulness, and what would be but ordinary neglect, in regard to one whom the defendant supposed a person of full age and capacity, would be gross neglect as to a child, or one known to be incapable of escaping danger."

Viewing the situation, therefore, in the light of the duty appellant owed to children of immature years, can it be said that the evidence was sufficient to support the conclusion of the jury that it did not take the precaution for their safety in maintaining the poles that this duty required? If the poles as constructed and maintained were likely to be climbed by boys of the age of appellee and appellant knew this or should have known it the jury was justified in concluding that proper precaution was not used, and in determining this it had the right to consider the habit, inclination and propensity of boys of his age to climb ladders, trees, poles, lumber piles or anything climbable by them, for this characteristic of boy nature is so well known that no one, unless he has forgotten that he was once a boy, would deny it. *Temple* v. *McComb City Electric Light & Power Co.,* 89 Miss. 1, 10 Ann. Cas. 924, 119 Am. St. Rep. 698, 11 L. R. A. (N. S.) 449, 42 South. 874; also *Spendler* v. *Williams,* 67 Miss. 1, 6 South. 613. This alone, as I view it, justified the jury in concluding that the poles as maintained were likely to be climbed by boys and that appellant knew this. However, they could hardly have been regarded in this light

had their steps started quite a distance above their base, as the standard for such poles set by the Federal Bureau of Standards and adopted by most of the states of the Union prescribes, or had climbing them been interfered with in some other way. The absence of steps near the ground, or the presence of other interference, would have suggested difficulty in climbing and in a measure served as a warning against doing so; but the presence of the steps and the absence of any interference, instead of having this effect, could have been viewed only as an invitation to climb.

"Any boy," says the court in *Burns* v. *City of Chicago*, 338 Ill. 89, 169 N. E. 811, 814, "seeing a tree with low branches, a latticed structure affording easy foot and handhold from the ground up, or a pole with steps leading up from within a foot or so of the ground, might reasonably be expected to give expression to his inward urge to climb. The element of 'attractiveness,' 'allurement,' or 'invitation to climb' is under such circumstances clearly present. But a boy's instinct to propel himself aloft would not be aroused in corresponding degree by the spectacle of a smooth iron pole, with the nearest step nearly 10 feet above the ground."

"The evidence tending to show a general custom not to place steps on the poles accessible from the ground indicates apprehension, at least," to use the language of the court in *Robertson* v. *Rockland Light & Power Co.*, 187 App. Div. 720, 176 N. Y. Supp. 281, "that, if continued to the ground, children or others might be attracted thereto and might use the steps and come in contact with the current." *McKiddy* v. *Des Moines Electric Co.*, 202 Iowa 225, 206 N. W. 815; *Wolczek* v. *Public Service Co.*, 342 Ill. 482, 174 N. E. 577.

If, however, the manner in which the poles were erected and maintained was not sufficient to show this knowledge on the part of appellant it is clear that it

knew long before appellee was injured that children were climbing them because the record discloses that months prior to that accident the principal of the Alhambra School at its request had warned his pupils that it was dangerous for them to do so. Knowing, therefore, that the poles were located in a public highway where they were easily accessible to children of immature years who might be playing there and that in the exercise of their propensity to climb they would frequently ascend them, it was incumbent upon appellant to have anticipated that they would do this and that in doing it they would expose themselves to danger from the highly charged transmission lines at their tops. It was just as necessary in erecting and maintaining the poles that it discharge this duty to children as it was that it take proper steps to protect persons of mature minds from danger in other respects. Under the facts the jury's conclusion that appellant had not taken the proper precaution for the protection of children and was, therefore, negligent in maintaining the poles in the manner it did, found support in the evidence and should not be disturbed. It is held by many authorities that the question whether premises or instrumentalities are sufficiently attractive to entice children to the danger and to suggest the probability of accident to them is a matter for the jury to determine. 36 A. L. R. 127, note. In *Hurd* v. *Phoenix Co.*, 7 Boyce (Del.) 332, 106 Atl. 286, the court in upholding a complaint alleging facts almost identical with those in this case said:

"It seems to be held by numerous authorities that if the object which caused the injury was located at a place where the child was invited, *or had a right to go, and where children are expected to be, was easily accessible, and attractive and alluring to children of tender years*, the maintenance of such an object would constitute negligence."

See the following: *Clark* v. *Pacific Gas & Elec. Co.*, (Cal. App.) 5 Pac. (2d) 58; Id., 118 Cal. App. 344, 6 Pac. (2d) 297; *Stedwell* v. *City of Chicago*, 297 Ill. 486, 17 A. L. R. 829, 130 N. E. 729; *Klingensmith* v. *Scioto Valley Traction Co.*, 18 Ohio App. 290; *Robertson* v. *Rockland Light & Power Co.*, *supra; Deming* v. *City of Chicago*, 321 Ill. 341, 151 N. E. 886; *Temple* v. *McComb City Electric Light & Power Co.*, *supra; Sweeten* v. *Pacific Power & Light Co.*, 88 Wash. 679, 153 Pac. 1054.

It is urged by appellant, however, and the contention is upheld in the original opinion and adhered to in the opinion denying a rehearing, that in climbing the pole appellee was a trespasser and as such not entitled to the protection that one rightfully ascending it would have. It is clear that children had as much right to be in the public highway as appellant had to place the pole upon which appellee was injured there, and that when an instrumentality, alluring but dangerous to children, is erected and maintained where they not only have the right but are wont to be, the party responsible for placing it there should be presumed to know that they would follow their childish instincts and walk over it, handle it, or climb it, whichever the occasion might demand. To say that a person may erect and maintain in such a place a dangerous instrumentality of this character without reasonably guarding it against this known propensity of children of immature years and be absolved from liability for an injury to a child who did not realize the danger of tampering with it upon the ground that in touching, handling or climbing it the child is a trespasser is in accord with neither reason nor one's sense of justice. A child of immature years may be technically a trespasser and yet in the exercise of the care reasonably expected of him under the circumstances. The fact that he follows his childish instincts by taking hold of or climbing a dangerous instrumentality

placed in a public street, however legitimate its purpose there may be, does not make him an outlaw no longer entitled to the protection which the humanity of the law usually throws around child life. *Kelly* v. *Southern Wisconsin R. Co.,* 152 Wis. 328, 44 L. R. A. (N. S.) 487, 140 N. W. 60. Hence, the act of a child in such circumstances, if a trespass at all, is only technically so and to it the doctrine applied to a trespass on private premises should not, and under many authorities does not, have any application.

In *Clark* v. *Pacific Gas & Electric Co., supra,* a case in which a boy twelve years of age climbed a pole very much the same as the one in question for the purpose of attaching a tin can to the top of the pole as a play signal and was injured by coming in contact with an uninsulated wire, the court said:

"The pole in question was maintained by the defendant on a public street or highway, and therefore all cases dealing with private premises upon which poles are erected are inapplicable to any of the issues involved herein. Both the plaintiff and the defendant had equal rights to be upon the public highway, and the trespass, if any, as claimed by the defendant, could only consist in the climbing of the pole."

In *Deming* v. *City of Chicago, supra,* a boy climbed a tree in a public street of Chicago to get a kite and about twenty feet up was injured by coming in contact with an uninsulated wire used by the city for lighting purposes. The court said:

"This injury occurred in a tree in a public street, and the deceased was, therefore, *not a trespasser at the time he was killed. Stedwell* v. *City of Chicago,* 297 Ill. 486, 17 A. L. R. 829, 130 N. E. 729. Plaintiff in error was bound, in placing in the street wires which carried a heavy load of electricity, to guard against accidents by the exercise of that degree of care commensurate with the danger incident to the use of such a dangerous agency. *Hausler* v. *Commonwealth Electric Co.,* 240 Ill. 201, 88 N. E. 561.

Whether the tree located in the public street was so attractive to children in their sports as to suggest the probability of such an accident as occurred, and whether the city was negligent in maintaining the wires as it did, were questions for the jury.''

In *Wheeling & L. E. R. R. Co.* v. *Harvey,* 77 Ohio St. 235, 122 Am. St. Rep. 503, 11 Ann. Cas. 981, 19 L. R. A. (N. S.) 1136, 83 N. E. 66, the court in discussing the historic case of *Lynch* v. *Nurdin,* 1 Q. B. 30, said:

''The child was rightfully in the street, and the fact that he meddled with the cart was not contributory negligence in one of his age, and it is not properly a case of trespass.''

In *Klingensmith* v. *Scioto Valley Traction Co., supra,* a case very similar to this one in that a boy sixteen years of age climbed a steel pole erected in a public street to see whether he or his companion could climb the highest and was injured with electricity near the top, the court said:

''The doctrine of non-liability to a trespasser rests upon the principle that to require the owner of property to anticipate a trespass, and to prepare his property at all times for such an eventuality, would impose upon such owner a duty inconsistent with his sovereign right to use his property and control it as he saw fit. But under the facts in the instant case was the decedent a trespasser in the sense that term is understood in the application of this rule of non-liability? We think not. We are convinced from the language of the court in the Harvey Case that it did not intend to include within the scope of that decision injuries resulting to persons while upon property erected and maintained in public places, and particularly on public grounds where children and minors congregate to play and such fact is or should be known to the offender.''

In *Znidersich* v. *Minnesota Utilities Co.,* 155 Minn. 293, 193 N. W. 449, a boy twelve years of age climbed a pole located in a public highway to recover

a kite lodged on the wires thirty feet high and was injured by electricity. The court said:

"The differentiating element is found in the fact that the child injured has as much right in the street where the alluring instrumentality is maintained as the owner thereof, thus removing in a substantial way the element of unquestioned trespass necessarily presented where private property and premises are invaded. *Barrett* v. *Village of Princeton,* 135 Minn. 56, 160 N. W. 190. The only element of trespass in the case where a public street is thus occupied is found in the technical wrong of the child in attempting to play with the offending attraction. And that act the jury may excuse, in the particular case, depending upon the alluring character of the article and the age and discretion of the child, with less hesitation perhaps than where there has been an actual invasion of the inclosed premises of another."

In *Robertson* v. *Rockland Light & Power Co., supra,* a boy eleven years of age climbed a telephone pole to see whether he or his companion could climb the fastest or highest and crossed over to an electric power pole standing near it in the public highway and was injured about twenty-five feet up by coming in contact with the current of an uninsulated wire. In disposing of the contention that the pole was on its private property, and, therefore, in climbing it he was a trespasser, the court said:

"I think there is a material difference between trespassing upon private premises and using private property left unguarded and unattended, either temporarily or permanently, in a public highway."

See, also, *Stedwell* v. *City of Chicago, supra; Charles* v. *El Paso Electric Ry. Co.,* (Tex. Com. App.) 254 S. W. 1094; *Rine* v. *Morris et al.,* 99 W. Va. 52, 127 S. E. 908; *Westerfield* v. *Levis,* 43 La. Ann. 63, 9 South. 52.

In the opinion of the majority the Clark, Deming and Stedwell cases are not in point, and the Klingen-

smith, Znidersich and Robertson cases, though in point, are unsound in principle. To my mind it would be difficult to find a case more applicable than the Clark case decided only a few months ago. In it the plaintiff alleged that he "was attracted by the steps on said pole line and climbed from the ground to the top" and testified that he "saw the steps on the pole and saw that it was easy to climb" and that he went up to attach a tin can, while in this case the steps were also from the ground up and the plaintiff alleged that the "poles were especially attractive to children of tender age to climb" and that the defendant so placed them, constructed as they were, "easily accessible, and easily climbed, and in addition thereto, where birds would nest in the tops, *making the climbing of the poles especially attractive to the young and undisciplined mind,*" and he testified that they were easy to climb and that he went up to see the birds' nests, the evidence further disclosing that either he, or he and one of his companions, climbed nine of them, one after the other, in a short time.

The Deming case is equally applicable, because the holding that the boy climbed a tree in a public street to remove a kite and, therefore, was not a trespasser was placed upon the ground that the tree was *in a public street* and not that it belonged to some one other than the city, the owner of the electric wires and the defendant in the case. If this had been the basis of the court's action it would undoubtedly have said so, for it is just as probable that the tree was in a park in the middle of the street as that it was between the curbing and the sidewalk, but even if it was in the latter it was in a portion of the street belonging to and under the control of the city, for a grass plot between the sidewalk and curb is a part of the street and a child thereon is not a trespasser as against the city. *Johnson* v. *Bay City,* 164 Mich. 251, Ann. Cas. 1912B 866, 129 N. W. 29. The fact that the Stedwell case

was cited as authority for the holding in the Deming case does not show that someone other than the city owned the tree. The statement that the city did not construct or own the pillar which the boy climbed and to which its wire was attached and that he was not a trespasser as to it does not signify that it would have held him a trespasser as to the city had it owned or maintained the pillar. The court passed on the situation confronting it and nothing else. When the city, by permission of the owner, attached its dangerous wire to the attractive pillar in a way that children in play might come in contact with it and be injured, it became responsible for the dangerous condition and the fact that it did not construct or maintain ''the pillar would not, itself, relieve it from liability.'' The question whether the child was trespassing upon the rights of some stranger is immaterial and the inquiry should always be, Was the company negligent in stringing its wire where it had reason to believe that it would imperil the lives of children? Why, ''if the electric company strings its wires along a highway through the branches of an apple tree,'' to use the language of the annotator in 17 A. L. R. 849, note V, ''the character and location of which, together with the quality of the fruit, are such that an ordinary person, knowing boys, must know that they will go into that tree for apples, and knowing also that if they do they will be in imminent danger of electrocution, should it be absolved from liability for the to-be-anticipated result of its own act, in case a boy is so electrocuted because he did, what such person knew he would do, trespass upon that apple tree, even though he was trespassing on the rights of someone.'' *Edwards* v. *Kansas City,* 104 Kan. 684, 180 Pac. 271. The four cases cited in the majority opinion in support of the view that the tree did not belong to or was not under the control of the city deal with public high-

ways and not the streets of a city, hence are not applicable.

The Klingensmith, Znidersich and Robertson cases also hold, as the excerpts above disclose, that it is only technical trespass for a child to climb a pole similar to those in this case erected in a public street where he had a right and was expected to be, and, to my mind, are sound in principle. So long as the boy injured in each case was at or near the pole he climbed he was not a trespasser, because the pole was where he had a right to be, in the public street, and it was not necessary that it attract him to its vicinity to prevent his being a trespasser while there. But to relieve a child who enters private premises without an invitation, or a license even, and finds himself near a dangerous instrumentality maintained thereon from the charge of trespassing, it would be required to be shown that he was lured there by that instrumentality and that it came properly within the term, "attractive nuisance." The location, therefore, of the instrumentality may mark the difference between a child's being and not being a trespasser when at or near it, the result's depending on whether it is where he had or did not have the right to be. If in the public highway, these cases hold that the only wrong he could be guilty of would be, in these instances, the technical one of climbing the pole, and to this the consequence of a real trespass would not attach because the pole was not only constructed in a manner that would tend to cause appellee to give way to his childish impulse to climb, that is, with steps from the ground up or without interference of any kind, but was placed where he had a legal right to go and where it was anticipated he would be; in other words, right where it would lead him to do the thing he did do. To hold appellee more than a mere technical trespasser under these circumstances

and relieve appellant of the responsibility of anticipating that he would follow his childish urge to climb the poles is to announce a rule of action wholly out of harmony with human experience.

Just how it may be said that when appellee climbed the pole he was no longer in the highway but had removed himself from it as effectually as though he had left it for the private premises on either side and consequently that he was no less a trespasser in the one instance than he would have been in the other I am unable to understand. By climbing the pole he did not leave the highway though this might have been the result if he could have lifted himself to the place of injury by his own bootstraps or had gone up in an aeroplane or a balloon, for there would then have been no connection between him and the ground; but as long as the pole on which he climbed and by which he was supported was in the highway he was there also, just as the driver of a truck or a rider of a bicycle is in the highway along which he is going. It is not necessary that one have his feet on the ground to be in the highway. If it were, the seven year old boy, for instance, who climbed a pile of cross-ties five or six feet high and was injured in doing so, was not in the street at the time and should have been treated as a trespasser. The court, however, declined to do so, stating that he had a right to be on the sidewalk regardless of the angle from which he approached it and that the company should reasonably have anticipated that children would be there and that ties stacked up on the sidewalk would be attractive as a place to play. *Charles* v. *El Paso Electric Ry. Co., supra.*

The reason courts impose liability for injuries from attractions located in a public highway much more liberally than when they are on private premises where children have no right to go is that their presence on the latter cannot always be anticipated

but is invariably to be expected in a public place. 36 A. L. R. 149, note with many citations; 6 R. C. L. Supplement, page 1185; *McKiddy* v. *Des Moines Electric Co., supra.* In fact if the injury occurs in a public place, "the circumstances must be very peculiar to relieve the electric company of liability, while, if it occurs on the property of the power company, there must be peculiar circumstances to hold the company liable." 17 A. L. R. 833, note 1.

Inasmuch, therefore, as appellee in climbing the pole was not trespassing but merely following his childish instinct to climb, that is, doing the thing it should have been anticipated one of his immature years would have done under the circumstances, he was in no sense contributing to his own injury and the jury was justified in concluding that in maintaining the pole in the manner described appellant had not fulfilled the duty it owed appellee and that in failing to do so it was guilty of negligence. And this is true whether he went up the pole to attach a tin can, to remove a kite, to look into a bird's nest, to see which of two boys could climb the highest or fastest, or to evade a playmate in a game of tag. The only effect of the bird's nest, whose presence appellant had known of for many months, was that it furnished an additional reason why it should have been anticipated the poles would be climbed by children of immature years. Its presence there might be urged in favor of appellant with much force if the poles had been maintained in such a way as to render them more inaccessible and difficult to climb, that is, had there been no steps within seven or eight feet of the base or other interference instead provided.

If the case be disposed of strictly upon the theory that the pole was an attractive nuisance as held in the original opinion and adhered to by the majority in disposing of the motion for a rehearing, it still follows that the fact that appellee stated that he

climbed the pole to see the bird's nest should not defeat his cause of action since to have this effect it should have been the sole attraction, that is, the pole itself should have formed no substantial part of it, and it is a fair inference from the facts that it was just as important a factor, if not more so, in leading him to climb it as was the bird's nest. The jury evidently felt this way because it returned a verdict for appellee after the court had specifically and definitely instructed it that if "the reason that the boy climbed the pole was the existence of the bird's nest thereon, your verdict must be for the defendant," and, to my mind, it was justified in its conclusion notwithstanding appellee's statement regarding the bird's nest, for he and one of his companions climbed nine of them in a short time and he said they were easy to climb. In addition, they were alluring and attractive to him for this purpose, a fact that the jury knew as a fact from common experience. It is equally clear, however, that this appeal would not have been so strong, if it in fact had had any existence at all, in the absence of steps within seven or eight feet of the ground or in the presence of other interference instead. In this event, it is almost certain that the attraction of the bird's nest would not have led him to climb even the first pole, much less eight others, in more or less rapid succession. The fact that he was not given the opportunity to say he enjoyed climbing the poles should not defeat his claim when the fact that he did is one that speaks for itself.

It is clear to my mind that appellee is entitled to judgment and to deny it for the reasons assigned appeals to me as overlooking the substance in pursuit of the shadow.

However, the case should go back for a new trial because the jury had no guide whatever by which to measure appellee's damages. It was clearly the

duty of the court to have instructed on this subject for without it the jury was at sea as to the method it should use in arriving at the proper amount. *Southwest Cotton Co.* v. *Ryan,* 22 Ariz. 520, 199 Pac. 124; *Curry* v. *Windsor,* 22 Ariz. 108, 194 Pac. 958. The damages allowed, $25,000, are heavy, and while this amount may not be more than the jury should have given yet this fact, together with a lack of any rule by which to measure them, demands that a new trial be had.

Such should be the order of the court.